THE PEOPLE OF THE STATE OF NEW YORK ex rel. MORRIS PLAN COMPANY OF BUFFALO, Respondent, *v.* WILLIAM J. BURKE and Others, as Assessors of the City of Buffalo, Appellants.  (Four proceedings, entitled alike, to review assessments for years 1923–1926, inclusive.)

Fourth Department, May 8, 1929.

*Herbert A. Hickman* [*Gregory U. Harmon, Corporation Counsel,* of counsel], for the appellants.

*Louis L. Babcock,* for the respondent.

*George P. Nicholson, Corporation Counsel* [*William H. King* and *Isaac Phillips* of counsel], for the City of New York, as *amicus curiæ.*

SEARS, P. J. The relator in these four proceedings seeks to obtain the cancellation of assessments imposed for the years 1923 to 1926, inclusive, under the provisions of section 14 of the Tax Law, as amended by chapter 897 of the Laws of 1923.* This amended section contains this provision: " Every individual banker and private banker, every investor and every person and every association or corporation, other than banks or trust companies, owning, or * * * holding moneyed capital coming into competition with the business of National banks * * * except bonds, notes or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall be assessed and taxed on the actual value of such moneyed capital in the tax district where such owner or holder resides * * *." In this enactment the language of section 5219 of the United States Revised Statutes, as amended in 1923, is followed. (See 42 U. S. Stat. at Large, 1499, chap. 267; U. S. Code, tit. 12, § 548.)† The Federal statute is to the effect that a tax levied by a State on shares of the capital stock of a National bank shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State coming into competition with the business of such National banks. The purpose of the provision quoted was obviously to fulfill the condition specified in the Federal statute as a prerequisite to the taxing of shares of the capital stock of National

---

* Since repealed and new § 14 added by Laws of 1926, chap. 286.— [REP.

† Since amd. by 44 U. S. Stat. at Large, 223, chap. 88.— [REP.

banks. The purpose of the Federal statute was to prevent discrimination in taxation against National banks so that investment in the shares of stock of such banks would not be less attractive because of taxation than investments in competitive institutions. (*Mercantile Bank* v. *New York*, 121 U. S. 138, 155; *First National Bank* v. *Hartford*, 273 id. 548.) The history of the legislation is discussed fully in *People ex rel. Pratt* v. *Goldfogle* (242 N. Y. 277).

The relator is obviously a corporation owning and holding moneyed capital. The sole question before us on this appeal is whether this capital is employed in a business in competition with the business of National banks within the meaning of the clauses of section 14 of the Tax Law above quoted.

The relator is an investment company incorporated under the provisions of article 7 of the Banking Law. In sections 293 and 293-a of the Banking Law the general powers of such an investment company are enumerated, while in section 294 certain restrictions are imposed.

The business of the relator for which it has full statutory authority may be briefly summarized as follows: (a) It makes loans to individuals in amounts not exceeding $1,000, usually for one year, at an interest rate of six per cent per annum paid in advance. The borrower and two sureties sign an instrument resembling a promissory note obligating themselves to repay the amount of the loan. The instrument is probably not negotiable. The borrower at the time of receiving the amount lent by the relator also receives from the relator, and himself signs, another instrument called an installment investment certificate, by the terms of which the borrower agrees to pay on the certificate an amount equal to the amount of the loan in installments before the maturity of the note. This installment investment certificate is assigned by the borrower to the relator as collateral security to the note. Thus when the full amount of the installment certificate is paid in by the borrower, the amount received by the relator may be applied upon the note and the obligation represented by the note may thus be paid. In addition to the interest the borrower pays a small sum in advance for investigation and examination of the credit of the borrower and his sureties and for the drawing of papers. (b) The relator issues installment and full paid thrift certificates bearing interest at five per cent in return for money paid to the relator. These certificates bear a promise to repay the sums represented by the certificates with five per cent interest thirty days after receipt of notice of intention to require payment but are usually repaid by the relator at sight. The relator by the terms of the certificates also reserves the right to pay the amount of the certifi-

cates with interest on any interest date upon first giving the certificate holders at least thirty days' written notice. (c) The relator makes loans usually for a year with Morris Plan certificates or " listed stocks and bonds " as collateral, to a maximum of $5,000 in any one loan, interest upon such loans being at six per cent, payable in advance. No charge is made to the borrower in addition to the interest in the case of such loans and no sureties are required.

We are called upon to decide whether this business of the relator is in competition with the business of National banks. Among the powers granted to National banks are the powers of " discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt," and also of " loaning money on personal security." (See U. S. R. S. § 5136, subd. 7; now U. S. Code, tit. 12, § 24, subd. 7.) Certainly the business of the relator as outlined above includes the discounting of evidences of debt and loaning money on personal security. (*National Bank* v. *Johnson*, 104 U. S. 271; *Utica City National Bank* v. *Gunn*, 222 N. Y. 204.) Even the sale of thrift certificates bears striking resemblance to the receipt of money by National banks when certificates of deposit bearing interest are issued.

The relator, however, to sustain this order relies on certain differences between its business and the business of National banks. It is urged that the business done by the relator in the shape of granting small loans with the installment payment certificate device and the charge for investigation and examination would be usurious if done by National banks, and, therefore, is not competitive with the business of National banks. This difference, however, is in respect to a mere detail. While it is true that National banks could not charge exactly the same amounts for loans as are charged by the relator, yet, in our opinion, the business does not cease to be competitive because of this difference. The statute of the State grants investment companies in this respect a privilege which is denied to National and State banks and trust companies. But the character of the business remains similar. The investment company need not take advantage of this privilege. Moneyed capital seeking investment would not be repelled from investment companies like the relator because of the power to charge higher interest rates than National and State banks. (*Mercantile Bank* v. *New York, supra*, 154, 155.) Rather would money be attracted and the competition rendered all the sharper thereby. It is urged that the business of the relator, while not a charity, is for the benefit of a deserving class of small borrowers, and to grant financial assistance in the way of loans in small amounts to persons outside

the range of ordinary bank customers. In the circulars of the relator the following occurs.

" Loans are made usually for one year for:
> Down payments on a home
> Reducing the mortgage
> Paying taxes
> Starting a business
> Expansion of business
> Installing electric wires and fixtures
> Re-decorating, painting or roofing
> Payment of debts, consolidating the indebtedness into one account."

In *Mercantile Bank* v. *New York (supra)* it was held that moneyed capital invested in savings banks was not competitive with National banks. " It cannot be denied that these deposits [in savings banks] constitute moneyed capital in the hands of individuals within the terms of any definition which can be given to that phrase; but we are equally clear that they are not within the meaning of the act of Congress in such a sense as to require that, if they are exempted from taxation, shares of stock in National banks must thereby also be exempted from taxation. No one can suppose for a moment that savings banks come into any possible competition with National banks of the United States. They are what their name indicates, banks of deposit for the accumulation of small savings belonging to the industrious and thrifty. To promote their growth and progress is the obvious interest and manifest policy of the State. Their multiplication cannot in any sense injuriously affect any legitimate enterprise in the community." (*Mercantile Bank* v. *New York, supra,* 160.) The business of the relator differs totally (except in the matter of the issuance of thrift certificates) from that of savings banks. It has nothing to do with encouraging saving. It is a business enterprise, it is attractive to investors because of the profits it seems to offer as a return. The admirable purpose of institutions working on the Morris Plan may be granted. It may be conceded that the borrowers at such institutions are not as a rule of the class who go to National banks when in need of money, and even that if such persons went to National banks, their requests for assistance would be apt to fall on deaf ears. It may even be that National banks would not find it financially desirable or practicable to undertake the details of such a business as is the relator's. Such considerations do not determine the question. Whether loans are large or small, whether interest is high or low, whether security is required or not, or if required,

limited in scope, what the borrower's need for the loan may be, are all immaterial elements. The relator is engaged in the business of discounting evidences of debt, of lending money on personal credit in the same quality though not in the same quantity as National banks. This is competitive within the meaning of the statute.

In our opinion the relator was assessable, and the orders canceling the assessments should be reversed on the law, with costs, the assessments restored, and the writs of certiorari dismissed, with fifty dollars costs and disbursements.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and CROSBY, JJ.

In each proceeding: Order reversed on the law, with costs, writ of certiorari dismissed, with fifty dollars costs and disbursements to defendants, and assessment restored.