THE PEOPLE OF THE STATE OF NEW YORK ex rel. TITLE AND MORTGAGE GUARANTEE COMPANY OF BUFFALO, Respondent, *v.* WILLIAM J. BURKE et al., as Assessors of the City of Buffalo, Appellants.

(Argued January 16, 1930; decided February 11, 1930.)

*Charles L. Feldman, Corporation Counsel (Herbert A. Hickman* of counsel), for appellants. To make moneyed capital taxable under the act, it is not necessary that it be employed in all the branches of business which may be transacted by a National bank, but it is sufficient if it comes into competition with one or more of such branches. (*People ex rel. Pratt* v. *Goldfogle,* 242 N. Y. 277.) It is not necessary to show that National banks are actually conducting a business with which relator competes; it is enough if it appears that relator engages in one or more branches of business which a National

bank is authorized to pursue. (*People ex rel. Pratt* v. *Goldfogle,* 242 N. Y. 277.) Moneyed capital used, as a business, in making mortgage loans on city and farm property competes with the business of National banks. (*People ex rel. Pratt* v. *Goldfogle,* 242 N. Y. 277; *First Nat. Bank* v. *City of Hartford,* 273 U. S. 548; *State of Minnesota* v. *First Nat. Bank,* 273 U. S. 561.)

*Myron S. Short* and *De Witt Clinton* for respondent. The findings of fact and conclusions of law made at Special Term do not violate any rule of law. (*People ex rel. Pratt* v. *Goldfogle,* 242 N. Y. 277; *First Nat. Bank* v. *City of Hartford,* 273 U. S. 548.)

CRANE, J. This is a companion case to *People ex rel. Morris Plan. Co. of Buffalo* v. *Burke* (253 N. Y. 85), except that the facts are somewhat different.

The Title and Mortgage Guarantee Company of Buffalo is engaged in the business of making first mortgage loans on improved real estate situated in various cities of the State, and of selling such mortgage loans to the public. It is incorporated under the Insurance Law of the State of New York, with its principal office in the city of Buffalo. The total contingent liability of the relator on the 1st day of May, 1926, on account of its outstanding guarantees on mortgages and mortgage certificates sold by it was $5,745,950 on mortgages, and $2,813,947.50 on mortgage certificates. Its surplus on that date was $181,606.80. The company was assessed on its moneyed capital, pursuant to section 14 of the Tax Law (Laws of 1923, ch. 897; Cons. Laws, ch. 60), in the sum of $225,000 as of October 1, 1926.

The business of the Title and Mortgage Guarantee Company of Buffalo is the making of tax and title searches, insuring titles to real estate, making of mortgages on real property and the sale of such mortgages or mortgage certificates for parts thereof with guarantee of title and

the payment of both the principal and interest represented thereby. The mortgages made and guaranteed are for a term of three years or more. It makes no loans on farm property. The company is authorized to loan money on mortgages to the extent of sixty-six and two-thirds per cent of the appraised value of the real estate. No banking business is carried on by the company, nor does it receive deposits or make loans of money on collateral, nor buy or sell bills of exchange; neither does it deal in negotiable securities issued by the governments — State or National — or by any municipality or other corporation.

To summarize for the purpose of comparison: The relator loans large sums of money upon bond and mortgage, guaranteeing the payment of principal and interest and the validity of the title to the land in the borrower.

What may a National bank do? It may also loan money on bond and mortgage under certain conditions. The provisions of the Federal law are to be found in Title 12 (Banks and Banking), chapter 3, section 371 of Mason's United States Code, Annotated, 1926, volume 1:

" 371. Loans on farm lands and improved real estate. Any national banking association not situated in a central reserve city may make loans secured by improved and unencumbered farm land situated within its Federal reserve district or within a radius of one hundred miles of the place in which such bank is located, irrespective of district lines, and may also make loans secured by improved and unencumbered real estate located within one hundred miles of the place in which such bank is located, irrespective of district lines; but no loan made upon the security of such farm land shall be made for a longer time than five years, and no loan made upon the security of such real estate as distinguished from farm land shall be made for a longer time than one year nor shall the amount of any such loan, whether upon such

farm land or upon such real estate, exceed 50 per centum of the actual value of the property offered as security. Any such bank may make such loans, whether secured by such farm land or such real estate, in an aggregate sum equal to 25 per centum of its capital and surplus or to one-third of its time deposits and such banks may continue hereafter as heretofore to receive time deposits and to pay interest on the same.

" The Federal Reserve Board shall have power from time to time to add to the list of cities in which national banks shall not be permitted to make loans secured upon real estate in the manner described in this section. (Dec. 23, 1913, c. 6, Sec. 24, 38 Stat. 273; Sept. 7, 1916, c. 461, 39 Stat. 754.) "

This section has been amended by an act of February 25, 1927, chapter 191, section 16, 44 Statute, 1232 (Mason's U. S. Code, Anno., Supp. No. 1, 1925–1929, p. 205), but the amendment is inapplicable here.

With National banks the loan is limited in time and also to fifty per cent of the actual value of the property offered as security. Neither can these banks guarantee the payment of principal and interest, nor the soundness of the title. Here again we have, as in *People ex rel. Morris Plan Co. of Buffalo* v. *Burke* (*supra*) two corporations doing fundamentally the same class of business, with material distinctions. The title company and the National bank loan money on bond and mortgage. To this extent at least the moneyed capital of the relator comes into competition with the business of National banks. Do the methods adopted by the title company, or the incidental differences in the extent or security of the loan affect this competition?

For the reasons stated in the opinion handed down herewith in *People ex rel. Morris Plan Co. of Buffalo* v. *Burke*, we think not. The guarantee of the payment of principal and interest of the mortgage loan, the larger amount which may be loaned upon the particular property,

and the length of time for which the loan may be made are incidents or differences which work to the advantage of the Title and Mortgage Guarantee Company, and necessarily narrow the field for the money output of National banks. (*People ex rel. Pratt* v. *Goldfogle*, 242 N. Y. 277; *First National Bank* v. *City of Hartford*, 273 U. S. 548, p. 555.) The money of the one nevertheless, competes with the business of the other or the business which it might do but for these advantages.

The order of the Appellate Division and that of the Special Term should be reversed, and the assessment reinstated, with costs in all courts.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Orders reversed, etc.