THE PEOPLE OF THE STATE OF NEW YORK ex rel. MORRIS PLAN COMPANY OF BUFFALO, Appellant, *v.* WILLIAM J. BURKE et al., as Assessors of the City of Buffalo, Respondents.

(Argued January 16, 1930; decided February 11, 1930.)

*Louis L. Babcock* for appellant. The appellant was not assessable upon the theory that it owned or held moneyed capital coming into competition with the business of National banks. (*Mercantile National Bank v. Mayor*, 121 U. S. 156; *First National Bank v. Anderson,*

269 U. S. 341; *London Realty Co.* v. *Riordan*, 207 N. Y. 264.)

*Gregory U. Harmon, Corporation Counsel (Herbert A. Hickman* of counsel), for respondents. To make moneyed capital taxable under the act, it is not necessary that it be employed in all the branches of business which may be transacted by a National bank, but it is sufficient if it comes into competition with one or more of such branches. (*People ex rel. Pratt* v. *Goldfogle*, 242 N. Y. 277.) Relator has moneyed capital assessable under the law because it is used in the business of discounting promissory notes and other evidences of debt and loaning money on personal security. (*People ex rel. Pratt* v. *Goldfogle*, 242 N. Y. 277; *Wagner* v. *Scherer*, 89 App. Div. 202; *National Bank* v. *Johnson*, 104 U. S. 271; *Utica City National Bank* v. *Gunn*, 222 N. Y. 204.) Relator's business fits exactly into the description of moneyed capital competing with National banks. (*Mercantile Bank* v. *New York*, 121 U. S. 138.)

*Arthur J. W. Hilly, Corporation Counsel (William H. King* and *Isaac Phillips* of counsel), for City of New York, *amicus curiæ.*

CRANE, J. The State of New York for years has attempted to tax the shares of National banks in accordance with section 5219 of the United States Revised Statutes (Mason's U. S. Code, title 12, ch. 4, § 548), which permits such taxation by the State where the bank is located, subject to the restriction that the taxation " shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state coming into competition with the business of national banks." In seeking to reach this equality of taxation, the State has met with repeated difficulty. (*People ex rel. Hanover Nat. Bank* v.

*Goldfogle,* 234 N. Y. 345; *People ex rel. Pratt* v. *Goldfogle,* 242 N. Y. 277; *People ex rel. Broderick* v. *Goldfogle,* 242 N. Y. 540, and similar cases, pp. 541, 542, 543, 544, 545, 546.) The State is between cross-fires. Taxes are not welcomed. The National banks oppose the tax on the ground that other competing moneyed capital is favored. Corporations and investors other than National banks fight the tax on the ground that their capital does not compete with such banks, and thus whichever position the State takes, it is confronted with objections.

By the Tax Law (Laws of 1923, ch. 897; Cons. Laws, ch. 60), in force in the years 1923–1926 (§ 14), the State provided for a tax upon moneyed capital competing with National banks so that it might validate its attempt to tax the shares of National banks. Unless it taxed this moneyed capital to the same extent that it taxed the shares of National banks, the latter tax would be illegal under the provisions of the United States Revised Statutes, above referred to. Such was our holding in the *Hanover Bank* case. Section 14 reads as follows:

" § 14. Owners or holders of moneyed capital other than shares of banks and trust companies taxable on such moneyed capital. Every individual banker and private banker, every investor and every person and every association or corporation, other than banks or trust companies, owning, or * * * holding moneyed capital coming into competition with the business of national banks except * * * bonds, notes or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall be assessed and taxed on the actual value of such moneyed capital in the tax district where such owner or holder resides * * *."

Under this provision the assessors of the city of Buffalo assessed the Morris Plan Company of Buffalo for each of

the years 1923 to 1926, inclusive, in the sum of $250,000, as the actual value of moneyed capital employed by it in competition with the business of National banks. Upon review of the assessments, taken pursuant to section 290 *et seq.* of the Tax Law, the Special Term held that the company was not assessable. The Appellate Division, upon the same facts, came to the opposite conclusion, and it rests with us to say which of these decisions is correct. The query is: Does the Morris Plan Company of Buffalo, organized as an investment company under article 7 of the Banking Law (Cons. Laws, ch. 2), hold moneyed capital coming into competition with the business of National banks, and thus become liable to a tax of one per cent, fixed pursuant to the statute? What is the yardstick by which we are to measure the facts?

The appellant says that the company does not carry on the business of banking in any true sense; that it has no authority to receive deposits or buy or sell coin or bullion; that it cannot put forth circulating notes or loans on bonds and mortgages; that it has never qualified with the Superintendent of Banks so as to enable it to accept deposits, and that it has no deposits. On the other hand, it is alleged by appellant that all its loans are paid back in weekly or monthly installments within the period of one year, and are made on investment certificates in connection with each transaction providing for installment payments. This, says the appellant, is not and cannot be done by National banks.

These facts, when conceded, do not answer the question presented. The business conducted by the relator and the money which it loans may, nevertheless, come in competition with the business of the National banks. We must look to the United States authorities for our guide upon this proposition. What is competition with the business of National banks? The latest expression is to be found in *First National Bank* v. *City of Hartford* (273 U. S. 548), where it was said: " The restriction

applies as well where the competition exists only with respect to particular features of the business of national banks or where moneyed capital ' is employed, substantially as in the loan and investment features of banking, in making investments by way of loan, discount or otherwise, in notes, bonds or other securities, with a view to sale or repayment and reinvestment.' " (Citing *First National Bank* v. *Anderson*, 269 U. S. 341, 348, and *Mercantile Bank* v. *New York*, 121 U. S. 138.)

Further, the court said: " Competition may exist between other moneyed capital and capital invested in national banks, serious in character and therefore well within the purpose of § 5219, even though the competition be with some but not all phases of the business of national banks. * * * Competition in the sense intended arises not from the character of the business of those who compete but from the manner of the employment of the capital at their command."

Again: " Our conclusion is that § 5219 is violated wherever capital, substantial in amount when compared with the capitalization of national banks, is employed either in a business or by private investors in the same sort of transactions as those in which national banks engage and in the same locality in which they do business."

The competition found as a fact in that case was the loaning of money on the security of notes, bonds and mortgages and the buying and selling of securities, all involving the investment and reinvestment by individuals, firms and corporations and their customers.

What is the business of the relator? It is stated fully in the findings of the trial court, with which there is no disagreement.

The principal business of the Morris Plan Company of Buffalo was the lending of money. For the years covered by the assessment, the loans were made upon promissory notes running for one year, bearing interest at six per

cent per annum, which interest relator exacted in advance, and to secure which notes the borrower in each case assigned to the relator a contract, called an installment investment certificate, issued by relator to the borrower at the time of the loan, and by which the borrower agreed to pay relator weekly or monthly sums sufficient to pay the note at maturity. The installment investment certificate taken out by such borrower at the time of the loan had no value other than the agreement of the borrower to pay the amount of the loan in weekly or monthly installments. Upon each loan made upon stock and bonds as collateral security, relator charged from two to one and one-quarter per centum of the amount of the loan, dependent upon the size thereof, to cover the cost of investigation. The company also made loans on promissory notes in sums not exceeding $5,000 for any one loan, secured by the pledge of stocks or bonds as collateral, and upon which loans a charge of six per cent per annum was deducted in advance. Upon loans not made upon collateral security, the company required the signatures upon the promissory note of two persons other than the borrower and the borrower's husband or wife, all signing as co-makers of the note. Such a note was not required when the loans were made upon stocks or bonds as collateral security.

The Morris Plan Company was in business for profit, making as much as ten per cent per annum upon its invested capital, which consisted solely of money. The trial judge found as a fact that the business of the company was the making of profit by the use of its capital as money invested for that purpose, in Morris Plan promissory notes by way of loan, discount or otherwise; that the loans were from time to time reduced to money and reinvested in other similar notes and loans.

The Morris Plan involves a few distinct features differing from the methods employed by National banks: *First,* the money is loaned in small amounts to be paid back

in one year in monthly installments. As six per cent is deducted at the time of the loan, additional interest is made on the monthly installments that are paid into the company by reinvestment. Also, a charge is made for investigating the borrower. In this way the company receives more than six per cent interest on its yearly loan.

*Second*, certificates of investment are issued with the loan calling for the monthly payment of an amount sufficient to pay the loan at the end of the year. This certificate is assigned to the company and of course has only the value of the amounts paid back to the lender.

*Third*, the Morris Plan receives no deposits and does not carry on a banking business.

There are features of the relator's business which resemble that of National banks:

*First*, it lends money on notes of the borrower, secured by two indorsers or co-makers. As collateral to this note there is given the installment investment certificate.

*Second*, the company lends money up to $5,000, taking as collateral stocks or bonds. In this instance no note of the borrower is required, but a certificate of investment is issued, or taken, requiring weekly or monthly payments. In this kind of loan and in the one above mentioned, the Morris Plan calls for the loaning of money on collateral or notes for which interest is charged or a discount made, the loan being repaid by installments instead of in a lump sum at a fixed period.

The brief for the assessors states that National banks in New York city have established a system of making small loans to be repaid in installments. Whether this be so or not, I can find nothing in the Federal Banking Laws to prevent such a practice. As the record, however, before us contains no evidence of this fact, we will disregard it in our determination, and assume that the National banks have not adopted any of the distinctive features of the Morris Plan, as above mentioned.

Nevertheless, the principal underlying fact remains: that the company is in the business of lending its capital to borrowers, on collateral, notes, bonds, stock or certificates of investment, for profit; and that upon payment of the loans it reinvests the moneys. Thus, moneyed capital of the Morris Plan comes into competition with the business of National banks. That the money may be repaid in installments and advanced on light security may be an attractive feature to the borrower, intensifying the competition; that the State may permit the company to make more than six per cent on its loans is an incident of the business which may attract capital to these companies for capital investment and divert it from the stock of National banks. Whichever way we look at it, the business of the Morris Plan and that of National banks is making money out of loans on notes and collateral security, with some advantages in favor of the Morris Plan, because of its appeal to small borrowers.

Attention may be called in this connection to chapter 286 of the Laws of 1926, which has repealed the section of the Tax Law with which we are dealing, and all other sections providing for a moneyed capital assessment.

The orders of the Appellate Division reversing the Special Term and sustaining the assessment for the years 1923, 1924, 1925 and 1926 are in accordance with our decisions and those of the United States Supreme Court, and must be affirmed.

The orders should be affirmed, with costs.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Orders affirmed.