NATIONAL CITY BANK OF NEW YORK, Plaintiff, *v.* BENJAMIN
LEVINE and Others, Defendants.

Municipal Court of New York, Borough of Manhattan, Third District,
December 5, 1933.

*Harold H. Keefe*, for the plaintiff.

*Joseph Fischer*, for the defendant Sylvia C. Kottler.

GENUNG, J. The action is brought by the plaintiff, hereafter called the bank, the holder of a note in the principal sum of $216, bearing the names of the defendants herein to recover the unpaid balance thereon. The defendant Sylvia C. Kottler has interposed answer to the complaint, admitting that the bank is the holder of a promissory note executed by the defendant Benjamin Levine as maker, and that she failed to make any deposits as set forth in said note, and alleging as separate and distinct defenses that she is an accommodation indorser, that the borrower secured her signature through misrepresentation, and that she was discharged by reason of an extension of time of payment. The bank has made a motion to strike out the answer and for summary judgment, and said defendant has made a cross-motion to amend her answer to allege a further defense of usury.

It appears that on May 8, 1933, one Benjamin Levine was granted a loan by the bank in the sum of $216. To evidence the loan he delivered to the bank a note signed by himself and by the other defendants as comakers. The note reads as follows: " One year from date, for value received, we, the undersigned, jointly and severally promise to pay to the order of The National City

Bank of New York, at its ———— branch in the City of New York, the sum of two hundred and sixteen dollars ($216) in United States gold coin or its equivalent, there having been deposited herewith as collateral security for the payment of this note pass book No. 15 04 365, issued by your compound interest department in the name of the undersigned borrower."

The note further provides: " The borrower agrees to deposit promptly to the credit of the compound interest account represented by the said pass book the sum of eighteen dollars ($18) on June 15, 1933, and an equal amount at regular monthly intervals thereafter, or at such other times as may be mutually arranged by and between the said bank and any of the undersigned, until a total of the face amount of this note shall have been deposited, and the others of the undersigned jointly and severally agree to make each of the said deposits promptly if the borrower should default." The note is signed: Borrower, Benjamin Levine; wife or husband of borrower, Sally Levine; comakers, Moses Levine, John H. Cooney and Sylvia C. Kottler.

This note fulfills all the requirements of a negotiable instrument (Neg. Inst. Law, § 20), in that it is in writing and signed by the maker or drawer; it contains an unconditional promise or order to pay a sum certain in money; it is payable on demand or at a fixed or determinable future time; it is payable to order or to bearer; and, as it is addressed to a drawee, it is named or otherwise indicated with reasonable certainty. The provision regarding the deposits in the compound interest account in no way affects the negotiability of the note, for the statute specifically authorizes the making of deposits at stated periods available for the payment of the note (Neg. Inst. Law, § 21) by providing that the sum payable is a sum certain, although it is to be paid with interest by stated installments, or by stated installments with a provision that upon the default in payment of any installment or of interest the whole shall become due. An examination of the signatures indicates while Benjamin Levine signed as borrower he was in reality a maker of the note, and the defendant Sylvia C. Kottler was a comaker and not an indorser, and the defendants are jointly and severally liable thereon. The representations that may have been made by the borrower, Benjamin Levine, in securing the signature of the defendant Sylvia C. Kottler are not binding upon the bank and are not available as a defense. It appears that the face of the note was $216, and six per cent; discount amounted to $12.96; the proceeds of the note, therefore, amounted to $203.04. It also appears that one dollar was credited to the compound interest account, and three checks were delivered in the sum of $102 and

$13.60 and $86.40 with tax, four cents, amounting to $203.04 paid to the borrower. A compound interest account was opened with the bank by the borrower, to the credit of which he and his comakers jointly and severally were obligated, by the terms of the note, to deposit promptly to the credit of the compound interest account represented by the said pass book, the sum of $18 on June 15, 1933, and an equal amount at regular monthly intervals thereafter until the amounts so deposited aggregated the sum of $216. It is admitted that the first deposit was not made on June 15, 1933, and a default occurred which entitled the bank to declare the note matured and demand the payment of the whole amount of the note. After repeated demands for payment, the plaintiff commenced this action on August 2, 1933. This cannot be construed as an extension of the time to pay, which would release the defendant Sylvia C. Kottler from her liability as a comaker.

It is urged by the defendant that the loan is usurious for two reasons: *First,* that greater than the legal rate of interest has been charged; and, *second,* that the borrower did not have the use of the principal of the loan for the period that it was made. The rate of interest on this loan was six per cent. The rates of interest which National banks may charge is governed both by Federal and State statute. Section 5197 of the Revised Statutes, as amended by the Banking Act of 1933, approved June 16, 1933 (U. S. Code, tit. 12, § 85), is as follows: " Any association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or other evidences of debt, interest at the rate allowed by the laws of the State, Territory, or District where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and no more, except that where by the laws of any State a different rate is limited for banks organized under State laws, the rate so limited shall be allowed for associations organized or existing in any such State under this title. When no rate is fixed by the laws of the State, or Territory, or District, the bank may take, receive, reserve, or charge a rate not exceeding 7 per centum, or 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and such interest may be taken in advance, reckoning the days for which the note, bill, or other evidence of debt has to run."

This section, in somewhat different form, was originally enacted in 1864. The exception then read as follows: " Except that where

by the laws of any state a different rate is limited for banks of issue organized under state laws, the rate so limited shall be allowed for associations organized in any such state under this act." (§ 30, 13 U. S. Stat. at Large, p. 108.)

Under this statute, National banks were limited to charging the interest rates generally allowed by State law, with the exception that if State banks of issue were allowed a higher rate, National banks could charge it. The words " of issue " remained in the statute until stricken therefrom by the Banking Act of 1933.

The rate of interest allowed to banks of New York by law (Gen. Business Law, § 370) is: " The rate of interest upon the loan or forbearance of any money, goods, or things in action, except as otherwise provided by law, shall be six dollars upon one hundred dollars, for one year, and at that rate, for a greater or less sum, or for a longer or shorter time."

From the affidavits submitted it appears, without contradiction by the borrower, that the discount reserved by the bank to itself on this loan of $216 amounted to $12.96, or six per cent interest. This was the rate allowed by the foregoing Federal and State laws. Moreover, the entire sum of $203.04, representing the proceeds of the note, was paid over to the borrower.

It is urged by the defendant that the requirement that the borrower make monthly deposits to the credit of a compound interest account assigned to the bank as additional security for the loan taints the transaction with usury.

The respect in which it is argued that such a plan violates the usury laws of New York is that, as soon as deposits are made by the borrower into the compound interest department, those deposits are equivalent to payments on his loan and they operate, at least, by indirection, to reduce the amount of his loan, and as the interest rate on the deposit is less than the six per cent rate charged on the loan, the result is that he pays a higher rate than six per cent on that part of the borrowed money which he still retains. A similar system is permitted by the New York State law to Morris Plan banks.

Under the bank's plan, deposits for the purpose of creating a fund which will at the maturity of the note retire it are made to the credit of a compound interest account which is hypothecated to the bank. This account provides additional collateral security for the loan. Upon those deposits the same interest is paid by the bank as is paid to any other depositor in the compound interest department. Against these deposits the same reserve is maintained as against all others in that department. These deposits are not treated as payments against the loan. If in order to

complete the service that was being rendered by its personal loan department the bank required that additional collateral security be provided in order to insure the retirement of the loan at the end of one year, that requirement can in no wise be considered usurious.

Moreover, Morris Plan banks are organized under the State Banking Law (Art. 7). This article formerly described corporations organized under it as " Investment companies." By amendments to the statute made in 1932 (Laws of 1932, chap. 450) they are defined as " Industrial banking companies." They are authorized to make loans not exceeding in amount $5,000 each. They are also authorized to sell or issue certificates of indebtedness which may be paid for in installments. They are expressly authorized to make loans to borrowers on the security of their own certificates of indebtedness purchased by the borrower and payable in installments.

In the case of *People ex rel. Morris Plan Co. of Buffalo* v. *Burke* (226 App. Div. 258, 261) the court said: " Certainly the business of the relator as outlined above includes the discounting of evidences of debt and loaning money on personal security. * * * Even the sale of thrift certificates bears striking resemblance to the receipt of money by National banks when certificates of deposit bearing interest are issued."

The result is that the Morris Plan bank may make a loan at six per cent, and as a condition of the loan require the borrower to purchase a certificate of indebtedness, payable in installments and bearing no interest or bearing a lower rate of interest than the loan, which certificate is held as security for the loan. This system has heretofore been assailed in the courts as usurious on the ground that installments paid on the certificate of indebtedness were equivalent to payments on the loan, with the result that the borrower pays a higher rate than six per cent on the amount of the loan actually in his hands. The New York courts have held that this is not usurious because it is expressly permitted by the statute. (*Morris Plan Co. of Buffalo* v. *White*, 140 Misc. 775; *Morris Plan Co. of Buffalo* v. *Hayes*, 141 id. 239.) The plan of the personal loan department for making loans does not differ in its legal essentials from that of the Morris Plan banks.

The personal loan plan combines a note signed by the borrower and comakers and an assigned collateral account to the credit of which there is deposited each month an amount sufficient to accumulate a fund to retire the loan at the end of a year, while the Morris Plan presents the combination of a note similarly executed together with a certificate of deposit against which payments are made each month.

It is obvious that, so far as usury is concerned, both the bank's personal loan department and Morris Plan are lenders of the same class and neither is a usurer.

It has been held that Morris Plan banks are in direct competition with National banks in the field in which they operate, and, therefore, liable for the payment of the same tax. (*People ex rel. Morris Plan Co. of Buffalo* v. *Burke*, 226 App. Div. 258; affd., 253 N. Y. 85.) The declared purpose of Congress has been always to enable National banks to meet competition from any type of State banking operation. The Federal interest rate statute for National banks was intended to allow them to compete with any class of lenders. (*Tiffany* v. *National Bank of Missouri*, 18 Wall. 409; 21 L. Ed. 862.) It, therefore, follows that section 5197 of the Revised Statutes (*supra*) enables National banks in New York to follow substantially the same system as do the Morris Plan banks in this State without being subject to the charge that they are exacting higher rates of interest than Congress has permitted. If any doubt of this right has heretofore existed it has been completely dispelled by the National Banking Act of 1933, which accords to " Morris Plan banks and other incorporated banking institutions engaged in similar business " (U. S. Code, tit. 12, § 321) the right of membership in the Federal reserve system.

The note which is the basis of this action is, therefore, not usurious.

Moreover, in actions involving a promissory note held by a National bank, the United States courts have repeatedly held that National banks are not subject to the State laws prescribing penalties for the taking of usurious interest, but are governed wholly by the United States statutes, and the States can exercise no control over them. (*Barnet* v. *National Bank*, 98 U. S. 555; 25 L. Ed. 212; *Farmers' & M. National Bank* v. *Dearing*, 91 U. S. 29, 32; 23 L. Ed. 196; *Haseltine* v. *Central Nat. Bank of Springfield*, 183 U. S. 132; 22 S. Ct. 50; 46 L. Ed. 118; *Evans* v. *National Bank of Savannah*, 251 U. S. 108; 40 S. Ct. 58; 64 L. Ed. 171; *McCarthy* v. *First National Bank*, 223 U. S. 493; 32 S. Ct. 240; 56 L. Ed. 523.) The United States Supreme Court in the case of *Barnet* v. *National Bank* (*supra*) and the case of *McCarthy* v. *First National Bank* (*supra*) clearly enunciates the proposition that the defense of usury is not available in an action instituted by a National bank against the maker of a note, and in these two cases construing section 5198 of the Revised Statutes of the United States (U. S. Code, tit. 12, § 86) prescribing the penalty for the taking of usurious interest, the court laid down the doctrine that where illegal interest has been paid, twice the amount so paid might be recovered in

a penal action on the debt. The defense of usury, relied upon by the defendant Sylvia C. Kottler, would avail her nothing. Motion of the plaintiff bank to strike out the answer and for summary judgment is granted, and motion by the defendant Sylvia C. Kottler to amend her answer to plead usury is denied. Five days' stay.