EVANS, SOLE SURVIVING RECEIVER OF THE CITIZENS & SCREVEN COUNTY BANK, *v.* NATIONAL BANK OF SAVANNAH.

CERTIORARI TO THE COURT OF APPEALS OF THE STATE OF GEORGIA.

No. 67.　Argued November 11, 12, 1919.—Decided December 8, 1919.

Whether a transaction by a national bank is usurious, and the penalties therefor, must be ascertained from the National Banking Act. P. 109.

That act adopts the usury laws of the States only in so far as they severally fix the rate of interest. P. 111.

Under the National Banking Act, which expressly empowers national banks to discount commercial paper and permits them to "take, receive, reserve, and charge on any loan or discount made . . . interest at the rate allowed by the laws of the state . . . . where the bank is located, and no more," such banks in discounting short-time notes in the ordinary course of business may retain an advance charge at the highest rate allowed for interest by the state law, even though such advance taking would be usurious under the state law in the cases to which it applies. P. 112.

To discount, *ex vi termini*, implies reservation of interest in advance. P. 114.

21 Ga. App. 356, affirmed.

THE case is stated in the opinion.

*Mr. Frederick T. Saussy* for petitioner.

*Mr. Edward S. Elliott*, with whom *Mr. Jacob Gazan* was on the briefs, for respondent.

MR. JUSTICE MCREYNOLDS delivered the opinion of the court.

The court below rightly construed the pleadings as presenting only one substantial federal question:—Did

respondent subject itself to the penalties prescribed for
taking usury by discounting short-time notes in the
ordinary course of business and charging therefor at the
rate of eight per centum per annum in advance? And we
think it correctly answered that question in the negative.

Respondent is a national bank. Its powers in respect of
discounts, whether transactions by it are usurious and the
consequent penalties therefor, must be ascertained upon a
consideration of the National Bank Act.  C. 106, 13 Stat.
99, 101, 108; Rev. Stats., §§ 5133 *et seq.; Farmers' & Me-
chanics' National Bank* v. *Dearing,* 91 U. S. 29; *Barnet* v.
*National Bank,* 98 U. S. 555, 558; *Haseltine* v. *Central
Bank of Springfield,* 183 U. S. 132, 134. Section 8 de-
clares: "That every association formed pursuant to the
provisions of this act  . . .  may elect or appoint
directors  . . .  and exercise under this act all such
incidental powers as shall be necessary to carry on the
business of banking by discounting and negotiating
promissory notes, drafts, bills of exchange, and other
evidences of debt; by receiving deposits.  . . ." Sec-
tion 30, printed in the margin,[1] contains regulations

---

[1] Sec. 30. That every association may take, receive, reserve, and
charge on any loan or discount made, or upon any note, bill of ex-
change, or other evidences of debt, interest at the rate allowed by the
laws of the state or territory where the bank is located, and no more,
except that where by the laws of any state a different rate is limited
for banks of issue organized under state laws, the rate so limited shall
be allowed for associations organized in any such state under this act.
And when no rate is fixed by the laws of the state or territory, the bank
may take, receive, reserve, or charge a rate not exceeding seven per
centum, and such interest may be taken in advance, reckoning the
days for which the note, bill, or other evidence of debt has to run. And
the knowingly taking, receiving, reserving, or charging a rate of interest
greater than aforesaid shall be held and adjudged a forfeiture of the
entire interest which the note, bill, or other evidence of debt carries
with it, or which has been agreed to be paid thereon. And in case a
greater rate of interest has been paid, the person or persons paying the
same, or their legal representatives, may recover back, in any action

presently important in respect of usury. Among other things, it provides: "That every association may take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidences of debt, interest at the rate allowed by the laws of the state or territory where the bank is located, and no more. . . ." All these provisions were carried into §§ 5136, 5197, and 5198, Revised Statutes, set out below.[1]

---

of debt, twice the amount of the interest thus paid from the association taking or receiving the same: *Provided*, That such action is commenced within two years from the time the usurious transaction occurred. But the purchase, discount, or sale of a bona fide bill of exchange, payable at another place than the place of such purchase, discount, or sale, at not more than the current rate of exchange for sight drafts in addition to the interest, shall not be considered as taking or receiving a greater rate of interest. (13 Stat. 108.)

[1] Rev. Stats., § 5136. Upon duly making and filing articles of association and an organization certificate, the association shall become, as from the date of the execution of its organization certificate, a body corporate, and as such, and in the name designated in the organization certificate, it shall have power— . . .

Seventh. To exercise by its board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of this Title. . . .

Rev. Stats., § 5197. Any association may take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidences of debt, interest at the rate allowed by the laws of the State, Territory, or district where the bank is located, and no more, except that where by the laws of any State a different rate is limited for banks of issue organized under State laws, the rate so limited shall be allowed for associations organized or existing in any such State under this Title. When no rate is fixed by the laws of the State, or Territory, or district, the bank may take, receive, reserve, or charge a rate not exceeding seven per centum, and such interest may be taken in advance, reckoning the days for which the note, bill, or other evidence

The National Bank Act establishes a system of general regulations.  It adopts usury laws of the States only in so far as they severally fix the rate of interest.  *Farmers' & Mechanics' National Bank* v. *Dearing, supra; National Bank* v. *Johnson,* 104 U. S. 271; *Haseltine* v. *Central Bank of Springfield, supra.*

The Georgia Code (1910) contains the following:

"Sec. 3426.—What is lawful interest.  The legal rate of interest shall remain seven per centum per annum, where the rate per cent. is not named in the contract, and any higher rate must be specified in writing, but in no event to exceed eight per cent. per annum.

"Sec. 3427.—What is usury.  Usury is the reserving and taking, or contracting to reserve and take, either directly or by indirection, a greater sum for the use of money than the lawful interest."

"Sec. 3436.—Beyond eight per cent. interest forbidden.

---

of debt has to run.  And the purchase, discount, or sale of a bona-fide bill of exchange, payable at another place than the place of such purchase, discount, or sale, at not more than the current rate of exchange for sight-drafts in addition to the interest, shall not be considered as taking or receiving a greater rate of interest.

Rev. Stats., § 5198.  The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon.  In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same; provided such action is commenced within two years from the time the usurious transaction occurred.  [That suits, actions, and proceedings against any association under this title may be had in any circuit, district, cr. territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases.  (Act February 18, 1875, c. 80, 18 Stat. 320.)]

It shall not be lawful for any person, company, or corporation to reserve, charge, or take for any loan or advance of money, or forbearance to enforce the collection of any sum of money, any rate of interest greater than eight per centum per annum, either directly or indirectly by way of commission for advances, discount, exchange, or by any contract or contrivance or device whatever."

Construing these sections, in *Loganville Banking Co.* v. *Forrester* (1915), 143 Georgia, 302, the Georgia Supreme Court held that charges reserved in advance by a state bank at the highest permitted rate of interest on a loan, whether short or long time, constitute usury, and said (p. 305): "If the intent be to take only legal interest, a slight and trifling excess, due to mistake or inadvertence, will not taint the transaction with usury. . . . But if the purpose be to take from the money advanced, at the time of the loan, the legal maximum rate of interest, the transaction is an usurious one." Earlier opinions by the court express a different view of the same sections. In *Mackenzie* v. *Flannery & Co.* (1892), 90 Georgia, 590, 599, it is said: "Nor can we determine, without reference to the evidence, whether the taking of eight per cent. interest in advance by way of discount was usurious. Eight per cent. was legal if agreed upon in writing; and it is well settled that the taking of interest in advance on short loans in the usual and ordinary course of business is not usurious, if the interest reserved does not exceed the legal rate." See also, *Union Savings Bank & Trust Co.* v. *Dottenheim,* 107 Georgia, 606, 614; *McCall* v. *Herring,* 116 Georgia, 235, 243.

Petitioner maintains the loans in question would have been usurious if made in Georgia by an individual or a state bank and that the same rule applies notwithstanding the lender happened to be a national bank. Respondent insists that the Federal Act permits it to discount short-time notes, reserving interest in advance at the maximum

interest rate allowed by the state law—in this instance, eight per centum.

In *Fleckner* v. *United States Bank*, 8 Wheat. 338, 349, 354, the charter of the Bank of the United States inhibited it from taking interest "more than at the rate of six per centum" and plaintiff claimed that by deducting interest at the rate of six per centum from the amount of a discounted note, the bank received usury. Replying to that point, this court, through Mr. Justice Story, said: "If a transaction of this sort is to be deemed usurious, the same principle must apply with equal force to bank discounts, generally, for the practice is believed to be universal; and, probably, few, if any, charters, contain an express provision, authorizing, in terms, the deduction of the interest in advance upon making loans or discounts. It has always been supposed, that an authority to discount, or make discounts, did, from the very force of the terms, necessarily include an authority to take the interest in advance. And this is not only the settled opinion among professional and commercial men, but stands approved by the soundest principles of legal construction. Indeed, we do not know in what other sense the word discount is to be interpreted. Even in England, where no statute authorizes bankers to make discounts, it has been solemnly adjudged, that the taking of interest in advance by bankers, upon loans, in the ordinary course of business, is not usurious." See also *McCarthy* v. *First National Bank*, 223 U. S. 493, 499.

This view has been generally adopted. Many supporting cases are collected in a note to *Bank of Newport* v. *Cook* (60 Arkansas, 288), 29 L. R. A. 761, and in 39 Cyclopedia of Law and Procedure, 948 *et seq.* "The taking of interest in advance, upon the discount of a note in the usual course of business by a banker, is not usury. This has long been settled, and is not now open for controversy." Tyler on Usury (1872), p. 155. "That it is not

usury to discount commercial paper in the ordinary course of business is absolutely settled. This rule of law arose out of custom and does not depend upon statute." Webb on Usury (1898), § 111.

Associations organized under the National Bank Act are plainly empowered to discount promissory notes in the ordinary course of business. To discount, *ex vi termini*, implies reservation of interest in advance; and, under the ancient and commonly accepted doctrine, when dealing with short-time paper such a reservation at the highest interest rate allowed by law is not usurious. Recognizing prevailing practice in business and the above stated doctrine concerning usury, we think Congress intended to endow national banks with the power, which banks generally exercise, of discounting notes reserving charges at the highest rate permitted for interest. To carry out this purpose, the National Bank Act provides that associations organized under it may reserve on any discount interest at the rate allowed by the State; and only when there is reservation at a rate greater than the one specified does the transaction become usurious.

The maximum interest rate allowed by the Georgia statute is eight per centum. That marks the limit which a national bank there located may charge upon discounts; but its right to retain so much arises from federal law. The latter also completely defines what constitutes the taking of usury by a national bank, referring to the state law only to determine the maximum permitted rate.

*Affirmed.*

MR. JUSTICE PITNEY, with whom concurred MR. JUSTICE BRANDEIS and MR. JUSTICE CLARKE, dissenting.

I agree that in this case but one federal question is properly presented for our consideration, and that is whether the National Bank of Savannah took usury,

108.   PITNEY, BRANDEIS and CLARKE, JJ., dissenting.

in violation of §§ 5197 and 5198, Rev. Stats., when, in discounting short-term notes in the ordinary course of business at its banking house in the State of Georgia, it knowingly reserved in advance a discount at the rate of eight per centum per annum, computed upon the face of such notes, when by the laws of Georgia this was not allowed to be done by state banks of issue.

I agree that this question is to be determined by the provisions of § 5197; but, so far as it depends upon ascertaining the local rate of interest, we must determine it according to the law of the State of Georgia, because the cited sections make that law the criterion. It is settled that although the consequences of acceptance of usurious interest by a national bank and the penalties to be enforced are to be determined by the provisions of the National Banking Act, the ascertainment of the rate of interest allowable is to be according to the state law. *Farmers' & Mechanics' National Bank* v. *Dearing,* 91 U. S. 29, 32; *Union National Bank* v. *Louisville &c. Ry. Co.,* 163 U. S. 325, 331; *Haseltine* v. *Central Bank of Springfield,* 183 U. S. 132, 134.

The language of § 5197 is explicit. It allows a national bank to "take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidences of debt, interest at the rate allowed by the laws of the State . . . where the bank is located, and no more, except that where by the laws of any State a different rate is limited for banks of issue organized under State laws, the rate so limited shall be allowed for associations organized or existing in any such State under this Title. When no rate is fixed by the laws of the State, . . . the bank may take, receive, reserve, or charge a rate not exceeding seven per centum, and such interest may be taken in advance, reckoning the days for which the note, bill, or other evidence of debt has to run. . . ."

I regard it as clear that by "the laws of the State" is meant not merely acts of legislation, much less a particular act or section, or a particular phrase in a single section. In order to determine the point in controversy we must take all applicable provisions of the statutes as interpreted and construed by the decisions of the court of last resort, and from their combined effect determine what is "interest at the rate allowed by the laws of the State."

The pertinent statute law of the State of Georgia is found in §§ 3426, 3427, and 3436 of the Code. The first of these defines "what is lawful interest," and prescribes seven per centum per annum as the legal rate where no rate is named in the contract, and permits a higher rate to be specified in writing, "but in no event to exceed eight per cent. per annum." Section 3427 defines usury as "reserving and taking, or contracting to reserve and take, either directly or by indirection, a greater sum for the use of money than the lawful interest." And § 3436 declares: "It shall not be lawful for any person, company, or corporation to reserve, charge, or take for any loan or advance of money, or forbearance to enforce the collection of any sum of money, any rate of interest greater than eight per centum per annum, either directly or indirectly by way of commission for advances, discount, exchange, or by any contract or contrivance or device whatever."

I agree that under the decisions of this court and the general current of authority, the discounting of short-term notes with a reservation of interest in advance at the highest rate allowed by statute is permissible in the absence of special restriction. *Fleckner* v. *United States Bank*, 8 Wheat. 338, 349, 354.

And I understand it to have been permitted in Georgia prior to the recent decision by the Supreme Court of that State in *Loganville Banking Co.* v. *Forrester*, 143

Georgia, 302.    See *Mackenzie* v. *Flannery & Co.*, 90
Georgia, 590, 599; *Union Savings Bank & Trust Co.* v.
*Dottenheim*, 107 Georgia,. 606, 614; *McCall* v. *Herring*, 116
Georgia, 235, 243.

The *Forrester Case* was decided April 13, 1915. The
claim involved in the present suit includes a series of
transactions, the first of which was on November 2, 1914,
the last on October 18, 1915. A majority of these were
prior to the decision in the *Forrester Case;* and as to them
I agree that there was no violation of the federal statute.

With respect to the others, I have reached a different
conclusion. The case was decided on a demurrer to
plaintiff's petition, in which it was alleged that defend-
ant (now respondent) knowingly received and charged
interest in excess of the highest contractual rate allowed
under the laws of the State, specifying the particular
dates and amounts. This necessarily imports a knowl-
edge at the time of each transaction as to what then
constituted the law of the State, supposing such knowl-
edge need be averred.

As to these later transactions, with great respect for
the views of my brethren, I am constrained to dissent
from the opinion and judgment of the court because
convinced that there is error in holding without quali-
fication that since the decision of the *Forrester Case*
8 per cent, is the rate of interest allowed and limited
for state banks of issue by the laws of the State of Georgia.
It seems to me erroneous to regard that decision as
merely defining usury and thus settling what lawfully
may be done by state banks in respect of taking interest
in advance, and to ignore its effect, in combination with
the quoted sections of the Code, as constituting the
law of the State which fixes the maximum rate of interest
for such banks and therefore, under § 5197, Rev. Stats.,
establishes the limit for national banks located in that
State. Plainly, I think, the purpose of Congress was

to place national banks upon a precise equality in this respect with banks of issue organized under state laws, and that where the local law places a higher or a lower limit upon such banks of issue than upon other lenders of money the same limit should be imposed upon the national banks.

The section has regard to substance, not merely to form; and in determining what is in substance the local rate of interest it is fallacious, I submit, to regard the multiplier only (say, 8 per cent.) and ignore the multiplicand, since both factors have equal influence in producing the result. As in other cases of testing state laws by a federal standard, the question is, what is the effect and operation of those laws, as construed and applied by the state court of last resort?

The difference between the effect of computing discount taken in advance according to the custom of bankers, by applying the allowed percentage to the face of the note —termed "bank discount"—and the effect of deducting an amount equivalent to exact interest on the sum actually loaned—termed "true discount"—is very substantial, and is recognized in the standard interest and discount tables, which contain computations on both bases. To illustrate by a comparison: If interest at the rate of 8 per centum per annum be reserved in advance and computed upon the face of a three months' note, it amounts to 2.0408 per cent. for the period, or at the rate of 8.1632 per centum per annum upon the money loaned; upon a six months' note it amounts to 4.1667 per cent. for the period, or at the rate of 8.3333 per centum per annum; upon a nine months' note, to 6.383 per cent. for the period, or at the rate of 8.511 per centum per annum; upon a one year note it amounts to 8.695 per cent.

The legal problem is precisely analogous to that involved in comparing respective burdens of taxation imposed upon different properties or classes of property;

concerning which this court has more than once held that a law requiring that one class shall be taxed at the "same rate of taxation" paid by another requires that not only the percentage of the rate but the basis of the valuation shall be the same. *Cummings* v. *National Bank,* 101 U. S. 153, 158, 162–163; *Greene* v. *Louisville & Interurban R. R. Co.,* 244 U. S. 499, 515.

The laws of Georgia do not prohibit the taking of interest in advance by a state bank; and they permit it to be charged according to the usual course of banking, with this qualification, that if reserved in advance at the highest percentage, or at any percentage that has the effect of yielding to the lender more than at the rate of 8 per centum per annum upon the amount actually loaned, it is usurious. This qualification, which since the decision of the *Forrester Case* must be deemed to be the law of Georgia, has precisely the same effect as if it had been inserted by way of an amending proviso to § 3426 of the Code. That it happens to arise from the construction and application of that section together with §§ 3427 and 3436 by the state court of last resort can make no difference for present purposes.

The case before us comes squarely within the principle of *Citizens' National Bank* v. *Donnell,* 195 U. S. 369, 373–374. There the question was whether a national bank in Missouri had taken usury, contrary to §§ 5197 and 5198, Rev. Stats., in taking interest computed at a percentage less than the highest rate allowed by the state law if agreed upon in writing, but at the same time violating a state prohibition against compounding interest oftener than once a year. This court held that the prohibition against frequent compounding affected the "rate of interest" within the meaning of those words in § 5198, and that this section was violated because the local prohibition was violated. I quote from the opinion (p. 374): "The rate of interest which a man receives is greater when

he is allowed to compound than when he is not, the other elements in the case being the same. Even if the compounded interest is less than might be charged directly without compounding, a statute may forbid enlarging the rate in that way, whatever may be the rules of the common law. The Supreme Court of Missouri holds that that is what the Missouri statute has done. On that point, and on the question whether what was done amounted to compounding within the meaning of the Missouri statute, we follow the state court. *Union National Bank* v. *Louisville, New Albany & Chicago Ry.*, 163 U. S. 325, 331. Therefore, since the interest charged and received by the plaintiff was compounded more than once a year it was at a rate greater than was allowed by U. S. Rev. Stat. § 5197, and it was forfeited."

For these reasons I am convinced that the respondent national bank, in knowingly discounting notes and reserving interest at the rate of 8 per centum per annum upon the face of the notes, in violation of the limitation imposed by the quoted sections of the Georgia Code as construed by the Supreme Court of that State in the *Forrester Case*, charged more than "interest at the rate allowed by the laws of the State," and that therefore the judgment in its favor ought to be reversed.

MR. JUSTICE BRANDEIS and MR. JUSTICE CLARKE concur in this dissent.