**ALEUTIAN LIVESTOCK CO., Inc. v. UNITED STATES.**

No. 47702.

United States Court of Claims.

Decided April 3, 1951.

Ray R. Murdock, Washington, D. C., Keith L. Seegmiller, Washington, D. C., of counsel, Ernest L. Wilkinson, Washington, D. C., on the briefs, for plaintiff.

William A. Stern, II, Washington, D. C., Newell A. Clapp, Acting Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

WHITAKER, Judge.

On July 5, 1942, plaintiff was engaged in the production of wool on Umnak Island, one of the Aleutian chain of islands, stretching one thousand miles or so from the Alaskan Peninsula out toward Japan and the Asiatic mainland. On that date defendant, as a security measure, evacuated all but two of the civilians residing on it, including plaintiff's employees. This left plaintiff's sheep unattended, as a result of which plaintiff suffered losses, for which it sues, on the theory that defendant took its property, which obligated it under the Fifth Amendment to the constitution to pay it just compensation.

At the time of the evacuation the Japanese, with whom we were then at war, were threatening the Aleutian Islands. On June 3 and 4 Japanese airplanes attacked Dutch Harbor, which lay between Umnak Island and the Alaska mainland, and they had previously occupied the islands of Attu and Agattu and Kiska, the westernmost islands in the Aleutian chain.

Attu was about 740 miles from Umnak, Agattu around 700 miles, and Kiska 560 miles. Between Kiska and Umnak, the principal islands in the chain, were Adak and Atka, 310 and 260 miles, respectively, to the west of Umnak.

Defendant had constructed an air base on Umnak Island at Fort Glenn, and on this island was the Army's westernmost radio station. On June 4 enemy planes were engaged over Umnak Pass, in the vicinity of Fort Glenn. The following day enemy surface units were spotted 135 miles southwest of Umnak. It appeared that the Japanese were undertaking to occupy the Aleutian Islands.

In this situation the military authorities believed it necessary for military reasons to evacuate civilians from Umnak Island. All were evacuated except two, an engineer and a school teacher, who acted as radio operator. This left plaintiff's sheep unattended from July 5, 1942, the date of the evacuation, to December 15, 1942, when plaintiff was permitted to send back to the island two of its employees.

Prior to July 1942 plaintiff had by careful selection and breeding developed a strain of sheep who were able to withstand the rigors of the Aleutian climate and which produced an excellent grade of wool. Plaintiff's operations on Umnak Island were carried on by a resident foreman, who employed native helpers as the occasion required. Constant care of the sheep is necessary for successful wool production

and flock maintenance. Breeding must be controlled by segregation, if satisfactory lamb production is to be obtained. Limited winter forage requires the separation of ewes, wethers, bucks and lambs into distinct flocks so that they may be grazed separately upon pasture best suited to their particular needs. Because of the great weight of the wool produced annually by these sheep, it is necessary that they be sheared yearly in order to obtain the highest quality of fleece. Shearing must be completed between June and September of each year. If shorn later, the animals would be unable to withstand the Aleutian winter. It is necessary periodically to clip excess wool from the eyes of the sheep to prevent wool blindness and resultant death from accident or from inability to find forage, and it is also necessary to clean the crotches of the ewes to facilitate breeding.

As a result of the necessity of leaving its sheep unattended from July to December, because of defendant's order of evacuation, plaintiff lost between six and seven thousand sheep.

However, we are of the opinion that there has been no taking of plaintiff's sheep, except perhaps for that small part for which compensation has already been paid.[1]

Defendant did not take possession of plaintiff's sheep. It only made it impossible for plaintiff to care for them. It did not do this for its own advantage, but only in the interest of public safety. The evacuation order did not apply to plaintiff's employees alone; it was directed to all civilians on Umnak Island. In the opinion of the military authorities it was necessary for security against enemy attack.

Such losses are an incident to the exercise of the sovereign power and duty to protect the people from attack by a hostile power. For losses occasioned by such enterprises the sovereign is immune.[2]

This is so of necessity. In much lesser fields the principle is recognized. A fire engine going to a fire collides with a vehicle, but the municipality is not liable; quarantine regulations entail losses on the individual, but the sovereign is not liable; the sale of liquor is prohibited and the investment in breweries and distilleries is impaired or destroyed; a house becomes unsafe as a dwelling place and is condemned. For all of these things the sovereign is not liable because they are done to protect the public health and safety. *A fortiori* the sovereign is immune from liability for the consequences of an evacuation order issued under the war powers to insure the safety of the country against enemy attack. The general welfare in such cases overrides considerations of private loss. Heflebower v. United States, 21 Ct. Cl. 228; Pacific Railroad v. United States, 120 U.S. 227, 233, 239, 7 S.Ct. 490, 30 L.Ed. 634; Nichols, On Eminent Domain, Vol. 1, sec. 96. See the extended discussion on this subject in Pacific Railroad v. United States, supra.

Damage to individuals incidental to the enforcement of lawful regulations of general applicability ordinarily are not "takings" of private property within the meaning of the Fifth Amendment. Oro Fina Consolidated Mines, Inc. v. United States, 118 Ct. Cl. ——, 92 F.Supp. 1016; St. Regis Paper Co. v. United States, 76 F. Supp. 831, 110 Ct. Cl. 271, certiorari denied 335 U.S. 815, 69 S.Ct. 32, 93 L.Ed. 370.

During the Army's occupation of the islands some of plaintiff's sheep and other property were subject to "midnight requisitions" by soldiers or sailors, but for this plaintiff has been fully compensated and has released the Government from liability on this account.

---

1. This will be further referred to.

2. United States v. Pacific Railroad Co., 120 U.S. 227, 233–239, 7 S.Ct. 490, 30 L.Ed. 634. Cf. Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194; Rupert v. Caffey, 251 U.S. 264, 303, 40 S. Ct. 141, 64 L.Ed. 260; Samuels v. McGurdy, 267 U.S. 188, 45 S.Ct. 264, 69 L.Ed. 568; Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774; Korematsu v. United States, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194.

Plaintiff was the beneficiary of a policy of war risk insurance issued by the War Damage Corporation, an agency of the United States. The corporation agreed "to idemnify the insured [plaintiff], and legal representatives, against direct physical loss of or damage to the property described in the attached application which may result from *enemy attack including any action taken by the military, naval or air forces of the United States in resisting enemy attack.*" The amount of the policy was $75,-000; $15,000 on buildings and general contents; $20,000 on wool; $1,500 on scow and dories; and $38,500 on livestock. Plaintiff was paid and accepted $38,500 on account of the loss of its sheep, and waived all other claims under the policy.

Plaintiff is not entitled to recover and its petition will be dismissed. It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN, and LITTLETON, Judges, concur.