FIRST NATIONAL BANK IN MENA,
Plaintiff,

v.

Jack A. NOWLIN, Defendant.

No. LR-74-C-24.

United States District Court,
E. D. Arkansas, W. D.

May 1, 1974.

C. J. Giroir, Jr., H. Watt Gregory, III, and Vincent Foster, Jr., of Rose, Nash, Williamson, Carroll & Clay, Little Rock, Ark., for plaintiff.

H. Maurice Mitchell and Jerry D. Jackson of Spitzberg, Mitchell & Hays, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

HENLEY, Chief Judge.

In this diversity action the plaintiff, First National Bank in Mena, Arkansas, seeks a declaratory judgment to the effect that national banks operating in Arkansas may by virtue of 12 U. S.C.A. section 85, withhold or collect true rates of interest on installment loans which would or might be considered usurious under the Constitution and laws of the State of Arkansas. Plaintiff also seeks a money judgment on two promissory notes executed in its favor in January of the current year by the defendant, Jack A. Nowlin, a citizen of Tennessee. The amount sought to be recovered is in excess of $10,000, exclusive of interest and costs. While the suit is admittedly a test case, the Court is convinced that it is not a "collusive action," and that it presents a case or controversy within the jurisdiction of the Court under 28 U.S.C.A. section 1332(a).[1]

The case has been submitted on the pleadings, stipulations of facts, thorough briefs, and oral arguments. As will presently appear, the case is of most substantial interest to lending agencies in Arkansas, to merchants who sell goods on installment credit, to borrowers of money, and to consumers who buy goods on the installment plan.

Section 13 of Article 19 of the Constitution of Arkansas provides that the maximum rate of interest that may be charged legally in this State is 10 per cent per annum, simple interest, and that obligations calling for the payment of interest in excess of that rate are void both as to principal and interest. The public policy of Arkansas against usury is a strong one, and the Constitutional provision just mentioned has been implemented by a number of statutes. Ark.Stats., Ann., section 68–602 et seq. The invalidity of a usurious obligation in Arkansas extends not only to the debt itself but also to any collateral or security pledged or given for the payment of the obligation. Ark.Stats., Ann., sections 68–608 and 68–609.

Title 12 U.S.C.A., section 85 provides in pertinent part that a national bank may "take, receive, reserve, and charge on any loan . . . or other evidences of debt, interest at the rate allowed by the laws of the State . . . where the bank is located. . . ." Section 86 provides that the taking, receiving, reserving or charging a rate of interest greater than allowed by section 85 shall be deemed a forfeiture of the entire interest called for by the obligation. And it is further provided that if excessive interest has in fact been paid, the person who has paid the interest, or his legal representative, may recover back from the bank, in an action in the nature of debt, "twice the amount of the interest thus paid."

---

[1] It is established that the federal courts will not entertain "collusive actions" which are contrived cases in which there are no actual disputes between the parties and in which one party controls both sides of the lawsuit and so manages the litigation as to bring about a predetermined desired result. Sierra Club v. Morton, 1972, 405 U.S. 727, 732, f. n. 3, 92 S.Ct. 1361, 31 L.Ed.2d 636; United States v. Johnson, 1943, 319 U.S. 302, 63 S.Ct. 1075, 87 L.Ed. 1413; Atherton Mills v. Johnson, 1922, 259 U.S. 13, 15, 42 S.Ct. 422, 66 L.Ed. 814; Bartemeyer v. Iowa, 1873, 18 Wall. 129, 134–135, 20 L.Ed.

792; Cleveland v. Chamberlain, 1861, 1 Black 419, 17 L.Ed. 93; Lord v. Veazie, 1850, 8 How. 250, 12 L.Ed. 1067. In Lord v. Veazie, Chief Justice Taney distinguished a collusive action from what is commonly called a "friendly suit." In a suit of the latter type the controversy between the parties is bona fide and real; the litigation is simply handled in an amicable manner with the parties cooperating with each other in procedural matters so as to bring the controversy before the court for decision as speedily and conveniently as possible.

The problem in this case arises from the fact that the nominal rate of interest which a lender ostensibly charges and the true or effective rate which a borrower actually pays may not be the same, and the difference is invariably in favor of the lender. The difference can come about in either of two ways, both of which are involved in this case.

Where a note is discounted at a nominal rate, and the amount of interest is reserved by the lender by being withheld from the borrower, the borrower pays more than the nominal rate on the money that he actually receives from the lender. For example, if an individual borrows $1,000 for a period of one year, and the note is discounted at a nominal rate of 10 per cent per annum, the borrower receives $900; when the note falls due the borrower pays the full $1,000 and has thus paid $100 for the actual use of $900 for a year, and the true or effective rate of interest on the loan is 11.1 per cent per annum. While that difference between the nominal rate and true rate may be thought slight, the difference is vastly increased if the note is repaid in periodic installments equal or approximately equal in amount.

The other method whereby a difference between a nominal rate and a true rate can arise is the adding on of interest to the principal amount of an obligation to be repaid in installments. That method is in common use in this day and time of personal installment loans and purchases of goods on installment credit. Where the add-on method is used, the lender calculates his interest by reference to a nominal rate over the full life of the loan; the interest so calculated is added to the principal amount of the debt and becomes part of the principal amount of the obligation. The amount of each installment is obtained by dividing the total amount to be paid by the total number of installments. This produces a marked difference between nominal rate and true rate because the borrower is being required to pay interest over the entire life of the loan on the entire amount of the obligation, the real principal of which he is reducing with each installment payment.

When either the discount method or the add-on method is applied to an installment note or other obligation, the true rate of interest is roughly twice the nominal rate. It is possible, of course, to produce by either method a true rate of 10 per cent per annum or less, but in order to do so the nominal rate employed must be in the neighborhood of five per cent per annum. Nominal rates of six per cent or higher will produce effective rates substantially in excess of ten per cent per annum.

Turning now to the facts, the parties have stipulated that on January 11, 1974, the defendant, for value received, executed and delivered to the plaintiff two promissory notes to be repaid in substantially equal monthly installments. The first note, which is the subject matter of Count I of the complaint, was in the principal amount of $11,000 payable in 12 approximately equal monthly installments. That note was discounted at a nominal rate of 8 percent per annum; the amount of the discount was $880; that amount was withheld by the Bank, and the defendant received $10,120. Had that note been paid according to its terms, the true rate of interest that the Bank would have received would have been 16.05 per cent per annum.

The second note, described in Count II of the complaint, evidenced a loan of $2,000 payable in 36 monthly installments. That note was not discounted; rather, interest was calculated at the rate of 8 per cent over the whole life of the loan, and the amount of the interest, $480, was added to the sum of $2,000 so that the face of the note was $2,480. Had that note been paid according to its terms, the Bank would have received interest at a true rate of 15.57 per cent per annum.

The first installment on both notes fell due on January 14, 1974, three days after the dates of the notes, and both notes contained standard acceleration clauses. The defendant did not pay the

installments, and on January 15, 1974, repudiated both notes in writing on the ground that under Arkansas law they were usurious. The Bank immediately accelerated both notes and filed this suit.

The complaint alleges that both notes are valid and enforceable obligations, and plaintiff prays for a declaratory judgment to that effect, and also for judgment on the notes, including interest on the principal obligations. By answer and counterclaim the defendant contends that the notes are usurious, that plaintiff is not entitled to recover any interest, and that the defendant is entitled to a penalty for usury as provided by 12 U.S.C.A., section 86.

For purposes of discussion this Court will assume for the moment and without elaboration that if the loans in question had been made by an Arkansas lender other than a national bank both of the notes would be held usurious and void as to both principal and interest.

The plaintiff contends, however, that the reference in 12 U.S.C.A. section 85, which is derived from section 30 of the original National Bank Act of 1864, to State law is limited in application to the nominal rate prescribed by State law, and that as long as a national bank calculates its interest by reference to a permissible State nominal rate, it is free to earn by means of discounts or add-ons of interest a true rate in excess of the maximum rate permitted by the law of the State in which the bank is located.

In support of its contention plaintiff relies primarily upon the decision of a majority of the Supreme Court of the United States in Evans v. National Bank of Savannah, 1919, 251 U.S. 108, 40 S. Ct. 58, 64 L.Ed. 171. Reliance is also placed on Fleckner v. United States Bank, 1823, 8 Wheat. 338, 5 L.Ed. 631, and on the recent decision in Northway Lanes v. Hackley Union National Bank & Trust Co., 6 Cir., 1972, 464 F.2d 855, in which the Court cited Evans v. National Bank, supra.

■ The defendant does not deny that the question of whether a loan made by a national bank is usurious is ultimately one of federal law and concedes that the effect of usury on a loan made by a national bank is also a question of federal law. The defendant earnestly contends, however, that section 85 in effect assimilates the Arkansas concept of what constitutes usury, and that if a loan would be considered usurious under Arkansas law if made by a lender other than a national bank, it is no less usurious because made by such a bank.

Counsel for the defendant disagrees sharply with the holding of the majority of the Supreme Court in *Evans* and presses heavily upon the dissenting opinion therein written by Justice Pitney and joined in by Justices Brandeis and Clarke. 251 U.S. at 114–120. Counsel also argues that in no event should *Evans* and *Fleckner,* supra, be applied to obligations like the ones involved in this case.

While *Northway Lanes,* supra, applied the *Evans* decision in a situation where a national bank in Michigan had added on interest to a long term installment obligation so as to produce a true rate of interest in excess of that permitted by Michigan law, this Court is not bound by *Northway Lanes* and respectfully declines to follow it.

*Evans* was decided more than fifty years ago, and at that time installment credit such as is common today was practically nonexistent. The notes with which the Court was concerned in *Evans* consisted of short term commercial paper of the type which banks had customarily been discounting for generations with the sanction of courts and State legislatures, including those of Arkansas, even though it was recognized that the discounting might produce an effective interest rate in excess of the maximum rate authorized by applicable local law.

This Court is simply not willing to extend *Evans* and its predecessor, *Fleckner,* to installment loans made by national banks where the effect would be to permit such banks to charge their customers effective interest at rates ap-

proximately twice the nominal rates on which the loans are calculated and which are in excess of the maximum effective rates permitted by State law.

In his dissenting opinion in the *Evans* case Justice Pitney expressed the opinion that the purpose of what is now 12 U.S.C.A. section 85, was to put national banks on a par with State banks as far as different interest rates are concerned. That particular expression ran counter to the prior holding of the Court in Tiffany v. National Bank of Missouri, 1873, 18 Wall. 409, 21 L.Ed. 862, wherein it was held that a national bank in Missouri was not limited to the rate of interest which a State *bank* was permitted to charge under State law but was entitled to charge the highest rate permitted by Missouri law to any lender or lending agency.

As this Court construes *Tiffany*, supra, the purpose of section 85 is to put a national bank as far as interest is concerned in as good a position as the most favored lender operating in the State in which the bank is located. It does not follow, however, that it was the purpose of Congress to give national banks any advantage over other lending agencies as far as interest rates are concerned. And that is the result that would be accomplished should the position of the plaintiff be upheld in this case.

This Court is unwilling to so hold. The Court is of the opinion that under section 85 a national bank is entitled to receive from its borrowers a true interest rate no greater than is allowed to other lenders under applicable State law, and that a loan made by a national bank is usurious if it would be usurious if made by another type of lending agency.

The Court has heretofore assumed that the notes under consideration would be considered usurious as a matter of Arkansas law, and counsel for the plaintiff does not seriously contend to the contrary. However, the Court does not feel justified in deciding the case ultimately on that assumption.

In Arkansas any installment paper that requires the payment of a true interest rate in excess of 10 per cent per annum is usurious. See e.g. Sloan v. Sears, Roebuck & Co., 1957, 228 Ark. 464, 308 S.W.2d 802. It would appear to make no difference whether the lender attempts to obtain the excessive interest by means of a discount or by means of an interest add-on. The Court, therefore, finds and concludes that both of the notes involved in the case are tainted with usury. That does not render the notes void as to principal, but plaintiff is not entitled to interest.

As to Count I of the complaint, the note described therein will be declared valid as to principal but void as to interest, and judgment in favor of the plaintiff in the sum of $10,120, the amount actually received by the defendant, will be entered. A similar declaration will be made as to the note described in Count II, and judgment in favor of the plaintiff in the sum of $2,000, the principal amount of the loan, will be entered.

The defendant has not actually paid out anything by way of interest and is not entitled to recover anything under 12 U.S.C.A., section 86.

Each side will bear its own costs.