Thomas E. RAY, Trustee in Bankruptcy
for George Patton Bailey

v.

AMERICAN NATIONAL BANK AND
TRUST COMPANY OF
CHATTANOOGA.

No. CIV-1-77-245.

United States District Court,
E. D. Tennessee, S. D.

Jan. 25, 1978.

884

Brown & Ray, Chattanooga, Tenn., for plaintiff.

Witt, Gaither & Whitaker, Chattanooga, Tenn., for defendant.

## MEMORANDUM

FRANK W. WILSON, Chief Judge.

This is an action to recover interest payments made unto the defendant which are alleged to have been usurious. The action is brought pursuant to sections 85 and 86 of the National Banking Act, Title 12 U.S.C. Jurisdiction of the Court is invoked under 28 U.S.C. § 1331 and is not in dispute. The case is presently before the Court upon a stipulation of facts and cross motions for summary judgment.

The following facts appear undisputed in the record from the stipulation of facts filed by the parties. The plaintiff is the Trustee in Bankruptcy for George Patton Bailey (Bailey). The defendant, American National Bank (Bank) is an association organized pursuant to the National Banking Act, is located at Chattanooga, Tennessee, and is within the Atlanta Federal Reserve District. On September 22, 1975, Bailey obtained a loan for business purposes from the Bank in the face amount of $32,556.48. The loan was made for a term of 48 months, and was repayable in equal monthly installments commencing upon November 1, 1975. Interest upon the loan was charged at five per cent (5%), with the interest having been discounted in advance for the 48 month term of the loan. The loan carried an "annual percentage rate" of eleven and one-half per cent (11.5%) assuming payments were made on the dates due. On July 23, 1976, Bailey obtained another loan of money for business purposes from the Bank in the face amount of $56,268.00 at six per cent (6%) interest discounted in advance for the entire term of 60 months. The loan was repayable in equal monthly installments commencing September 1, 1976 and carried an "annual percentage rate" of thirteen and fifty-two hundredths per cent (13.52%) assuming payments were made on the dates due. The discount rate on 90-day commercial paper at the Atlanta Federal Reserve Bank was six per cent (6%) at the time of the 1975 loan and was five and one-half per cent (5.5%) at the time of the 1976 loan. The balance due on the notes at the date of bankruptcy, May 18, 1977, was $23,843.44 on the 1975 loan and $48,763.40 on the 1976 loan, Bailey having paid the sum of $8,713.04 upon the 1975 loan and the sum of $7,504.60 on the 1976 loan prior to bankruptcy.

Sections 85 and 86 of the National Banking Act, Title 12 U.S.C., provide in relevant part as follows:

Sec. 85. *Rate of interest on loans, discounts and purchases.*—Any association may . . . charge on any loan or discount made, . . . interest at the rate allowed by the laws of the State, . . . where the bank is located, . . or in the case of business or agricultural loans in the amount of $25,000 or more, at a rate of 5 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where the bank is located, whichever may be the greater, and no more, . . .

Sec. 86. *Usurious interest; penalty for taking; limitations.*—The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same: *Provided,* That such action is commenced within two years from the time the usurious transaction occurred. R.S. § 5198.

As noted above, section 85 of Title 12 U.S.C. provides two methods for computing the maximum permissible rate of interest which the Bank here may charge. The first is by reference to the maximum rate allowed by the State of Tennessee and the second is by reference to the Atlanta Federal Reserve Bank's discount rate for 90-day commercial paper. The defendant contends that the rates charged to Bailey were in conformance with the provisions of the National Banking Act no matter which method of computation is selected. The plaintiff asserts that under either method the rates were usurious.

Turning first to the method of computation which is based upon the state interest rate, under what is sometimes known as the "most favored lender" doctrine national banks are authorized under section 85, Title 12 U.S.C., to charge interest at the maximum rate permitted by state law for the state's most favored lender wherein the national bank is located. *Tiffany v. National Bank of State of Missouri,* 85 U.S. 409, 21 L.Ed. 862 (1841); *Northway Lanes v. Hackley Union National Bank and Trust Company,* 464 F.2d 855 (6th Cir. 1972).

The defendant relies upon T.C.A. § 45–433(a)(i) to support its contention that the interest charged upon each of the subject loans was allowable under the laws of Tennessee and therefore allowable to it under section 85, Title 12 U.S.C. The Tennessee statute referred to allows state banks to discount loans "at a rate not to exceed six per cent (6%) per annum". Assuming the validity under the Tennessee Constitution of the statute referred to, the interest charged upon each of the loans here involved would be allowable under Tennessee law and, accordingly, would be allowable to the defendant bank under section 85, Title 12 U.S.C.

The plaintiff contends, however, that pursuant to the principles laid down by the Tennessee Supreme Court in the recent case of *Cumberland Capital Corporation v. Patty,* Tenn., 556 S.W.2d 516 (1977), section 45–433(a)(i) of the Tennessee Code is in violation of Article 11, Section 7 of the Tennessee Constitution to the extent that the statute purports to authorize state banks to charge interest in excess of an effective annual rate of 10%. It should be noted in this regard that Article 11, Section 7 of the Tennessee Constitution provides as follows:

"The legislature shall fix the rate of interest, and the rate so established shall be equal and uniform throughout the State; but the Legislature may provide for a conventional rate of interest not to exceed ten per cent (10%) per annum."

The foregoing constitutional provision was the subject of interpretation by the Tennes-

see Supreme Court in the *Cumberland Capital* case. After a full review of the relevant constitutional and legislative history, the Tennessee Supreme Court struck down as unconstitutional that portion of a Tennessee statute [T.C.A. § 45–2007(f)] which purported to authorize financial institutions incorporated under the Tennessee Industrial Loan and Thrift Act to discount loans at a rate not to exceed seven and one-half per cent (7½%).

Although the *Cumberland Capital* case, *supra,* dealt with a statute [T.C.A. § 45–2007(f)] authorizing industrial loan companies to effect loans at a maximum discount rate of 7½% whereas the statute here involved [T.C.A. § 45–433(a)(i)] authorizes state banks to effect loans at a maximum discount rate of 6%, the defendant concedes that the constitutional principle enunciated in the *Cumberland Capital* case would apply with equal force to the latter statute. In fact, it is clear from the language in the *Cumberland Capital* case that the Tennessee Supreme Court contemplated this result when it stated:

> "While we are only concerned in this action with the constitutionality of section 45–2007(f) TCA, it is possible that the rationale of this opinion will apply to other statutes; however, they are not before the Court for consideration, and it would be improper for us to make an advance determination on financial institutions not parties to this controversy." *Id.* at 542.

■ Accordingly, on the authority of the *Cumberland Capital* case this Court can only conclude that the provision in TCA § 45–433(a)(i) purporting to authorize state banks to discount loans at a maximum rate of six per cent (6%) is violative of Article 11, Section 7, of the Tennessee Constitution to the extent that the statute purports to authorize state banks to charge interest in excess of an effective annual rate of ten per cent (10%).

In response to the foregoing constitutional conclusion the defendant makes two contentions. In the first place, the defendant contends that the reference to state law, as contained in section 85 of Title 12 U.S.C., incorporates such state law only to the extent of establishing a maximum interest rate which national banks may charge, and that once that rate is established federal law, and not state law, governs with respect to whether such a rate is chargeable by way of discount or by way of an effective annual interest rate. In the second place, the defendant contends that since the court in the *Cumberland Capital* case held that the rule therein established would be non-retroactive in its application to T.C.A. § 45–2007(f), the rule of non-retroactivity would be equally applicable to TCA § 45–433(a)(i), with the result that the loans here involved comport with the Tennessee law since the loans and their repayments were fully accomplished prior to August 22, 1977, the date of the decision in the *Cumberland Capital* case.

The Court is of the opinion that each of the foregoing contentions is a correct statement of the law as it relates to the interest payments here involved.

■ The legal conclusion that the reference to state law contained in section 85 of Title 12 U.S.C. incorporates such state law only to the extent of establishing a maximum interest rate which national banks may charge and that once that rate is so established federal law, and not state law, governs with regard to whether such a rate is to be charged by way of discount or by way of an effective annual interest rate would appear to be mandated by the decision of the United States Supreme Court in the case of *Evans v. National Bank of Savannah,* 251 U.S. 108, 40 S.Ct. 58, 64 L.Ed. 171 (1919) and by the decision of the Court of Appeals for the Sixth Circuit in the case of *Northway Lanes v. Hackley Union National Bank and Trust Co.,* 464 F.2d 855 (C.A. 6, 1972).

In *Evans v. National Bank of Savannah, supra,* the Supreme Court held that:

> "Associations organized under the National Bank Act are plainly empowered to discount promissory notes in the ordinary course of business. To discount, ex vi termini, implies reservation of interest in

advance; and, under the ancient and commonly accepted doctrine, when dealing with short-time paper such a reservation at the highest interest rate allowed by law is not usurious. Recognizing prevailing practice in business and the above stated doctrine concerning usury, we think Congress intended to endow national banks with the power, which banks generally exercise, of discounting notes reserving charges at the highest rate permitted for interest. To carry out this purpose, the National Bank Act provides that associations organized under it may reserve on any discount interest at the rate allowed by the state, and only when there is reservation at a rate greater than the one specified does the transaction become usurious.

"The maximum interest rate allowed by the Georgia statute is 8 per centum. That marks the limit which a national bank there located may charge upon discount; but its right to retain so much arises from federal law. The latter also completely defines what constitutes the taking of usury by a national bank, referring to the state law only to determine the maximum permitted rate." 40 S.Ct. p. 60.

In *Northway Lanes v. Hackley Union National Bank and Trust Co., supra,* the Court reviewed the *Evans* decision and evidenced its interpretation of the decision as follows:

"These statutory provisions have been broadly construed. In *Evans v. National Bank of Savannah, supra,* by a 6–3 decision, the court approved the taking of interest in advance at the maximum legal interest rate by national banks even if located in states which prohibited their own state banks, competing in a limited loan market, from doing the same." P. 860.

Thereafter the court stated that national banks had this right whether or not they complied with some special state statute that might authorize discounting under limited circumstances. In that regard the court stated:

"Appellants acknowledge that, under Michigan statute as well, appellee might have reserved interest in advance, but maintained that in order to do so, it had to comply with the other restrictions of the Michigan enabling statute, including limitations on the amount of the loan and the charging of closing expenses. . . . *This argument misses the point.* Under the reasoning of *Evans, supra,* appellee's right to charge interest in advance arises independent of state laws which are binding upon state banks. Appellants' first contention, therefore, is not meritorious." Pp. 860–861. (Emphasis supplied)

As contrary authority, the plaintiff relies upon the case of *First National Bank in Mena v. Nowlin,* 509 F.2d 872 (C.A. 8, 1975). Suffice it to say that whatever may have been the interpretation placed upon section 85, Title 12 U.S.C., by the Court of Appeals for the Eighth Circuit in the *First National Bank* case, the *Northway Lanes* case would be controlling authority in this circuit.

■ The Court is of the opinion that a like conclusion, sustaining the validity of the interest herein charged and paid under section 85 of Title 12 U.S.C., is required by that portion of the decision in the *Cumberland Capital* case wherein the court held that its decision on the constitutional issue was not to be retroactively applied. There is no reason apparent to this Court why the doctrine of non-retroactivity would not be equally as applicable to T.C.A. § 45–433(a)(i), the state statute here involved, as it was held by the Tennessee Supreme Court to be applicable to T.C.A. § 45–2007(f). Since the interest payments here involved were both negotiated and paid prior to August 22, 1977, the date of the decision in the *Cumberland Capital* case, and since statutory authority then existed under T.C.A. § 45–433(a)(i) for the interest rates charged, such interest payments would be lawful under section 85, Title 12 U.S.C.

Although the foregoing conclusions are decisive of the issues presented upon the cross motions for summary judgment now before the Court, the Court will, in the

interest of completeness, nevertheless consider the further issue of whether the interest herein charged and paid was in compliance with or in violation of that portion of section 85, Title 12 U.S.C., wherein it is provided, as an alternate method of fixing maximum interest rates for national banks, that such banks shall not charge interest at a rate of 5% in excess of the applicable federal reserve discount rate. This provision was added to section 85, Title 12 U.S.C., by amendment in 1974, the amendment being limited by its terms to a duration of three years. There is an absence of case authority interpreting the language of this provision of the statute. Although it is clear from the legislative history (*See* 1974 U.S.Code Cong. & Admin.News, p. 6249) that the purpose of the amendment was to enable national banks to charge interest in excess of the 10% limit reported to have been applicable under state law in three states, including Tennessee, the legislative history is not otherwise helpful upon the issue here presented, that issue being whether the alternate method of determining the maximum interest rate therein allowed to national banks is permissible only when charged as an effective annual interest rate or whether discount at the rate therein allowed is permissible.

■ Since the language of the amendment does not exclude the application of the interest rate therein specified by way of discount, but rather expressly specifies that the federal reserve "discount rate" shall be a basic segment of the interest rate therein authorized, the Court is of the opinion that the maximum interest rate formula contemplated by the amendment encompasses the charging and collecting of that rate by way of discount.

The fact that a like interpretation has been placed upon the state interest rate formula expressed in the initial portion of the statute supports this conclusion. *See Evans v. National Bank of Savannah, supra,* and *Northway Lanes v. Hackley Union National Bank and Trust Co., supra.*

■ It having been stipulated by the parties that the discount rates charged the plaintiff by the defendant were at the rate of 5% and 6%, and it having been further stipulated that the federal reserve discount rates applicable at the time of the plaintiff's loans were at the discount rate of 5½% and 6%, the Court is of the opinion that the rates herein charged and paid were within the limitations of section 85, Title 12 U.S.C.

An order will accordingly enter denying the plaintiff's motion for summary judgment, sustaining the defendant's motion for summary judgment, and dismissing this lawsuit.