**In re Shirin M. GUCCIONE, Debtor.**

**Shirin M. GUCCIONE, Plaintiff,**

v.

**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF SUFFERN, Defendant.**

**Bankruptcy No. 83 B 20520.**
**Adv. No. 84 Adv. 6021.**

United States Bankruptcy Court, S.D. New York.

July 11, 1984.

Oliner & Oliner, New York City, for debtor.

Reich & Reich, White Plains, N.Y., for First Federal Savings & Loan Association of Suffern.

DECISION ON COMPLAINT OBJECTING TO SECURED CLAIM OF FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF SUFFERN

HOWARD SCHWARTZBERG, Bankruptcy Judge.

In this Chapter 13 case, the debtor, Shirin Guccione, objects to a secured claim filed by First Federal Savings & Loan Association of Suffern ("First Federal") on the grounds that the claim includes an improper charge of interest upon past due interest, that it fails to account for interest earned by the debtor on escrowed funds and that mortgage payments were misapplied to pay the bank's attorneys' fees. First Federal asserts that as a bank chartered by the Federal Home Loan Bank Board ("FHLBB") operating under the regulatory power of this agency, it may legally compound interest due on the obligation owed by the debtor in accordance with regulations promulgated by the FHLBB. To the extent that these regulations conflict with the law of New York State prohibiting the compounding of interest charges, First Federal relies on the Supremacy Clause contained in Article VI of the United States Constitution in support of its claim. Additionally, First Federal contends that it has credited the debtor's account for interest earned on the escrowed funds and that it is entitled to be reimbursed for attorneys' fees incurred in connection with enforcement of the mortgage it holds. The debtor sought to reduce First Federal's claim and to recover mortgage payments which she alleges were improperly applied towards legal fees in an adversary proceeding brought pursuant to Bankruptcy Rule 7001 which resulted in the following:

## FINDINGS OF FACT

1. The debtor is the owner of a parcel of real property located in the Town of Ramapo, Rockland County, which is her residence.

2. First Federal is a savings and loan association chartered by the FHLBB pursuant to the Home Owners' Loan Act of 1933, 12 U.S.C. §§ 1461–68, and is subject to the regulations prescribed by the FHLBB. 12 U.S.C. § 1464(a).

3. First Federal is the holder of a first mortgage lien on the debtor's residence under a bond and mortgage dated February 24, 1972 which were recorded on March 1, 1972. The original amount of the mortgage debt was $18,000.

4. The bond held by First Federal contains the following provision authorizing the compounding of interest:

> It is further agreed that when the Obligor shall have failed to make any payment as required, the Obligee may, as and for the fine or other penalty, add the interest for such month to the principal of the mortgage debt remaining unpaid at the beginning of such month to establish the basis for computing the interest for the next succeeding month.

Additionally, in regard to attorneys' fees, paragraph 9(b) of the bond and an unnumbered paragraph of the mortgage state that "any charge incurred by the Obligee (including reasonable counsel fees) in the determination, notification, and/or adjustment of any default, may be added to the principal balance due."

5. In June of 1982 the mortgage in question fell into default. First Federal concedes that when a mortgage payment was not made, unpaid interest was added monthly to the principal indebtedness and the interest charge of 7½ percent provided in the mortgage and bond was computed in the following month based on this increased amount. In short, the debtor was charged interest upon outstanding interest.

6. On November 17, 1982, First Federal commenced a foreclosure action against the debtor in the Supreme Court of the State of New York, County of Rockland. This action was subsequently removed by the Small Business Administration, a defendant named in the proceeding, to the United States District Court for the Southern District of New York. First Federal did not furnish the debtor with a notice of default or a notice of the right to cure the default prior to commencing the foreclosure action.

7. On September 15, 1983, while the foreclosure proceeding was pending, the debtor paid First Federal the sum of $5000 in an apparent attempt to cure the existing default. At this time, the balance owing on the mortgage debt was $15,694.45. From this $5000 payment, First Federal paid to its attorneys, the law firm of Burke & McGlinn, on September 22, 1983, the amount of $1678.38 for services rendered in connection with the pending foreclosure action. The remaining $3321.62 was applied towards principal and interest owed on the mortgage and to an escrow account maintained by First Federal.

8. The debtor has presented no proof that First Federal wrongfully withheld interest earned on the escrow fund. In fact, monthly payment books submitted by the debtor reflect that quarterly interest has generally been paid on the escrow account. A negative balance in the escrow account caused by the lack of funds deposited by the debtor for the payment of taxes on the property explains why no interest was earned during certain periods, including January through September 1983.

9. On November 2, 1983, the debtor filed a petition under Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 1301–30. First Federal filed a secured claim in the sum of $15,397.54 to which the debtor now objects.

## DISCUSSION

### INTEREST UPON INTEREST

■ It is a settled principle under the law of New York that a contractual provision to pay interest upon interest is void. *Debentureholders Protective Committee of Continental Investment Corporation*

*v. Continental Investment Corporation,* 679 F.2d 264, 271 (1st Cir.), *cert. denied,* 459 U.S. 894, 103 S.Ct. 192, 74 L.Ed.2d 155 (1982); *Madison Personal Loan, Inc. v. Parker,* 124 F.2d 143, 145 (2d Cir.1941); *Levy v. Forest Hills Associates (In re Forest Hills Associates),* 40 B.R. 1145, 11 B.C.D. 1145, 1148 (Bkrtcy.S.D.N.Y.1984); *In re Webb,* 29 B.R. 280, 285 (Bkrtcy.E.D. N.Y.1983); *Young v. Hill,* 67 N.Y. 162, 168–71 (1876); *Giventer v. Arnow,* 44 A.D.2d 160, 161, 354 N.Y.S.2d 162, 164 (3rd Dep't 1974), *rev'd on other grounds,* 37 N.Y.2d 305, 372 N.Y.S.2d 63, 333 N.E.2d 366 (1975). First Federal, a bank chartered by the FHLBB, argues that it is authorized by a federal regulation to compound interest on a loan in default and that any state law to the contrary is pre-empted under the Supremacy Clause of the United States Constitution.[1] The applicable regulation, promulgated by the FHLBB, states in pertinent part:

> A loan contract may provide for the deferral and capitalization of a portion of interest, and may provide that a portion of the consideration to be received by the association in return for making the loan shall be interest in the form of a percentage of the amount by which the current market value of the property, during the loan term or at maturity, exceeds the original appraised value.

12 C.F.R. § 545.6–2(a)(2)(iv) (1983). There was no such express provision permitting the compounding of interest at the time the debtor agreed to the loan terms in question. The predecessor regulation which was in effect in 1972, when this mortgage loan was executed, set forth only in general terms that the loan must "provide for the full protection to the Federal association." 12 C.F.R. § 545.6–11 (1972).[2]

The United States Supreme Court has very recently stated that:

> Pre-emption doctrine stems from the Supremacy Clause of the United States Constitution and invalidates any state law that contradicts or interferes with an Act of Congress. Pre-emption arises in a wide array of contexts, from circumstances in which federal and state laws are plainly contradictory to those in which the incompatibility between state and federal laws is discernible only through inference.

---

**1.** The Supremacy Clause of Article VI states:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2.

**2.** 12 C.F.R. § 545.6–11 (1972) provided:

§ 545.6–11 Loan contract.

Each loan shall be evidenced by note, bond, or other instrument and shall be secured by such security instrument as is in keeping with sound lending practices in the locality. The loan contract shall provide for full protection to the Federal association and shall be recorded; it shall provide specifically for full protection with respect to insurance, taxes, assessments, other governmental levies, maintenance, and repairs, and it may provide for an assignment of rents and for such other protection as may be lawful or appropriate. Such Federal association may pay taxes, assessments, insurance premiums, and other similar charges for the protection of its interest in the property on which it has loans; all such payments may, when lawful, be added to the unpaid balance of the loan. A Federal association may require life insurance to be assigned to it by its borrowers as additional collateral for loans on the security of real estate; such association may advance premiums on any such life insurance and, when lawful, may add the premium so advanced to the unpaid balance of the loan. A Federal association may require that the equivalent of one-twelfth of the estimated annual taxes, assessments, insurance premiums, and other charges on real estate security, or any of them, be paid in advance to such association in addition to interest and principal payments on its loans, to enable the association to pay such charges as they become due from the funds so received. A Federal association shall keep a record of the status of taxes, assessments, insurance premiums, and other charges on all real estate on which such association has loans or which is owned by it. All loan instruments shall comply with applicable provisions of law, governmental regulations, and the Federal Association's charter.

*Hayfield Northern Railroad Co. v. Chicago & North Western Transportation Co.,* — U.S. —, —, 104 S.Ct. 2610, 2614, 81 L.Ed.2d 527 (1984) (footnotes omitted). State law may be pre-empted by federal law in any of three ways. First, Congress may express a clear intent to pre-empt state law. Second, in the absence of express pre-emptive language, Congress may legislate so comprehensively as to occupy an entire field of regulation leaving no room for supplemental state law. Finally, where there has been no express pre-emption or complete displacement of state law, federal law will nonetheless be pre-emptive where compliance with both state and federal law is impossible or where state law stands as an obstacle to accomplishment of the purposes and objectives of Congress. *Capital Cities Cable, Inc. v. Crisp,* — U.S. —, —, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984); *Michigan Canners & Freezers Association, Inc. v. Agricultural Marketing and Bargaining Board,* — U.S. —, —–—, 104 S.Ct. 2518, 2521–23, 81 L.Ed.2d 399 (1984). The pre-emption doctrine applies with equal force in regard to both federal regulations and federal statutes. *Capital Cities Cable, Inc. v. Crisp,* — U.S. at —, 104 S.Ct. at 2700; *Fidelity Federal Savings and Loan Association v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). The issue this case presents is whether the FHLBB regulation governing this 1972 home loan pre-empts New York law prohibiting the compounding of interest.

■ At the time that interest was capitalized on the loan in question, i.e. following the default in June 1982, FHLBB regulations then in effect authorized a provision in a loan contract calling for the capitalization of interest, 12 C.F.R. § 545.6–2(a)(2)(iv) (1983), and also declared the pre-emption of any state law purporting to address the subject of the operations of a federal association. 12 C.F.R. § 545.6(a)(2) (1983). It is arguable that these regulations expressly pre-empt New York law forbidding the charging of interest upon interest. *Cf. Fidelity Federal Savings and Loan Associa-*

*tion v. de la Cuesta,* 458 U.S. at 158–59, 102 S.Ct. at 3025–26 (state law restricting enforcement of due-on-sale clauses pre-empted by FHLBB regulation). Whether the federal regulations in effect when interest was capitalized pre-empted state law is an issue which need not be decided because the loan contract in this case is governed by the law as it existed in 1972, when the instrument was executed. The 1982 regulation, 12 C.F.R. § 545.6–2(a)(2)(iv) (1983), which permits a loan contract to contain a provision for the capitalization of interest, does not indicate whether it is to apply retrospectively. In the absence of any directive that the regulation be given retrospective effect, it is fundamental that the regulation should only be applied prospectively. *See, e.g., United States v. Security Industrial Bank,* 459 U.S. 70, 79, 103 S.Ct. 407, 413, 74 L.Ed.2d 235, 243 (1982) ("The principle that statutes operate only prospectively ... is familiar to every law student."); *Prentis v. Atlantic Coast Line Company,* 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908) (railroad rate prescribed by state commission is in the nature of a legislative act which "looks to the future and changes existing conditions by making a new rule, to be applied thereafter...."); *see also Cohen v. District of Columbia National Bank,* 382 F.Supp. 270, 286 (D.C.1974) (legislation enacted after loan was executed has no retroactive effect). Therefore, under basic statutory construction principles, the FHLBB authorization to capitalize interest should not be applied retrospectively to the loan contract in this case which was executed in 1972.

■ A further reason for refusing to apply 12 C.F.R. § 545.6–2(a)(2)(iv) (1983) to First Fidelity's loan is that at the time the loan was executed, any contractual provision to pay interest upon interest was void under the law of New York. *See Debentureholders Protective Committee of Continental Investment Corporation v. Continental Investment Corporation,* 679 F.2d at 271. A contract term which is void upon its execution cannot thereafter be le-

gitimated by a change in the law. As stated in *New York v. Interborough Rapid Transit Company*, 257 N.Y. 20, 33, 177 N.E. 295, 299 (1931), "[t]he obligation of a contract ... is determined by the law in force when it is made." This principle has been expounded as follows:

> As a general rule, the law in force at the time of the execution of a contract controls its construction and effect. Generally, *the validity of a contract depends upon the law as it existed at the time it was made*, except that it may be affected by subsequent legislation in the exercise of the police power or by a subsequent statute announcing a new public policy ... or by repeal of a prohibitory act.

10 N.Y.Jur. *Contracts* § 129 (1960) (emphasis added). Thus, the loan term calling for the capitalization of interest cannot be enforced because it was initially void, and remained void under New York law.

■ It is urged by First Federal that aside from the 1982 regulation, state law proscribing interest upon interest was preempted under the more general regulation in force in 1972 which stated that each "loan contract shall provide for full protection to the Federal association." 12 C.F.R. § 545.6–11 (1972). The first basis of preemption does not apply in this case because there was no express pre-emptive language present in 1972. *See Michigan Canners & Freezers*, ─── U.S. at ───, 104 S.Ct. at 2520. Nor is the third basis of pre-emption relevant, because there was no actual conflict between federal and state laws in 1972 which would have made compliance with both sets of laws impossible. *See Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963). First Federal could have complied with state law by refraining from inserting in its loan documents a provision for the capitalization of interest. No federal regulation required, or even authorized expressly, such a provision in 1972.

If the general language contained in the 1972 regulation is found to be pre-emptive, it must be shown "that Congress has intended, by legislating comprehensively, to occupy [this] entire field of regulation...." *Capital Cities Cable, Inc. v. Crisp*, ─── U.S. at ───, 104 S.Ct. at 2700.

The purported conflict between state and federal law in this case is not nearly as pronounced as the inconsistency involved in *Fidelity Federal Savings & Loan Association v. de la Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), a case upon which First Federal places great reliance. In *de la Cuesta*, three borrowers received loans from a federal savings and loan association chartered by the FHLBB and gave deeds of trust to the bank as security for the loans. Each deed of trust contained a due-on-sale clause which was unenforceable under California law unless the lender demonstrated that transfer of the property impaired its security. In conflict with California due-on-sale law was a FHLBB regulation issued in 1976, expressly allowing a federal savings and loan association to include in a loan contract a due-on-sale clause.[3] A further clash consisted of a term in the trust deeds to the effect that state law would govern the deeds and the preamble to the federal due-on-sale regulation explaining that due-on-sale practices are intended to be governed "exclusively by Federal law" and not "bound by or subject to any conflicting State law." *Id.* at 147, 102 S.Ct. at 3019 (quoting 41 Fed.Reg. 18286, 18287 (1976) (codified initially in 12 C.F.R. § 545.6–11(f) (1980)). The Court recognized the direct conflict between the two laws, concluded that the FHLBB intended to pre-empt state restrictions on due-on-sale practices and accordingly enforced the federal regulation. 458 U.S. at 170, 102 S.Ct. at 3031.

---

**3.** The Court noted in de la Cuesta that "[t]he due-on-sale regulation plainly provides that a federal savings and loan 'continues to have the power' to include a due-on-sale clause in a loan instrument and to enforce that clause 'at its option.'" 458 U.S. at 154, 102 S.Ct. at 3023 (quoting 12 C.F.R. § 545.8–3(f) (1982)).

Ostensibly, a comparison of state and federal laws governing the capitalization of interest in 1972 does not reveal the degree of conflict or inconsistency as was present in *de la Cuesta.* In 1972, the FHLBB had expressed no policy in regard to the charge of interest on unpaid interest. The Supreme Court has frequently repeated that "[p]re-emption of state law by federal statute or regulation is not favored 'in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress [or regulatory body] has unmistakably so ordained.' " *Commonwealth Edison Company v. Montana,* 453 U.S. 609, 634, 101 S.Ct. 2946, 2962, 69 L.Ed.2d 884 (1981) (quoting *Florida Lime and Avocado Grower, Inc. v. Paul,* 373 U.S. at 142, 83 S.Ct. at 1217), *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 522, 101 S.Ct. 1895, 1905, 68 L.Ed.2d 402 (1981); *Chicago & North Western Transportation Company v. Kalo Brick & Tile Company,* 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981). It is clear that as of 1972 the FHLBB did not unmistakably ordain the pre-emption of state law forbidding the charge of interest upon interest. In fact, the regulations did not treat this subject until 1982 with the addition of 12 C.F.R. § 545.6–2(a)(2)(iv) (1983) which permitted the capitalization of interest in home loan contracts. This regulatory amendment indicates an intention to modify previously existing lending practices and provide federal lending associations with additional protection which was not granted originally. *Cf. Fidelity Federal Savings and Loan Association v. de la Cuesta,* 458 U.S. at 158–59, 102 S.Ct. at 3024–25 (regulatory amendment pre-empting state due-on-sale law "confirmed" preamble to *pre-existing*

regulation calling for federal due-on-sale clause enforcement).

It cannot be said that in 1972, the degree of federal legislation over the subject matter indicated an intent of Congress to occupy the entire field of lending practices of FHLBB chartered banks. Federal associations have traditionally been held subject to state imposed restrictions on interest charges. The adoption of state usury limits by federal law appeared in the National Bank Act of 1864, § 30, ch. 106, 13 Stat. 99, 108.[4] For over a century, state interest ceilings applied to federally chartered banks to place national banks on an equal plane with banks organized under state law. *See Evans v. National Bank of Savannah,* 251 U.S. 108, 117–18, 40 S.Ct. 58, 61–62, 64 L.Ed. 171 (1919) (Pitney, J., dissenting); *Roper v. Consurve, Inc.,* 578 F.2d 1106, 1115, n. 9 (5th Cir.1978), *aff'd,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980); *see generally* 12 U.S.C.A. § 85 n. 2 (Supp.1984). The long history of federal associations operating under the governance of state interest limits defeats any theory that the subject of interest charged by federal associations must be regulated by federal law. Indeed, it was only until 1982 that the FHLBB saw the need to ·modify existing lending practices to authorize the capitalization of interest by its banks. In sum, there is no basis, express or implied, for the pre-emption of the New York prohibition on compounded interest in regard to this 1972 loan.

### INTEREST ON ESCROW FUNDS

■ The debtor objects to First Federal's claim to the extent that it omits interest earned on escrow funds. Under Code § 502(a), First Federal's claim carries pri-

---

4. The current version of this statute is codified at 12 U.S.C. § 85 (1982), and states in part:

§ 85. Rate of interest on loans, discounts and purchases.

Any association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or other evidences of debt, interest at the rate allowed by the laws of the State, Territory, or District where the bank is located, or at a rate of 1 per

centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and no more, except that where by the laws of any State a different rate is limited for banks organized under State laws, the rate so limited shall be allowed for associations organized or existing in any such State under this chapter.

ma facie validity. "Evidence must be offered by the objecting party to overcome the prima facie case." 1 W. Norton, Bankruptcy Law and Practice § 28.05 (1981). In this case, the debtor presented no evidence supporting her objection that interest was not paid on the escrow account. The only evidence before the court indicates that interest was paid quarterly whenever there were funds on hand. Naturally, no interest was earned over those periods when the debtor's account reflected a negative balance due to First Federal's advances for the payment of expenses on the property. Thus, the debtor's objection to the claim based on the nonpayment of interest earned on the escrow account is without merit.

## COUNSEL FEES

■ The holder of a secured claim who seeks to recover reasonable fees paid to attorneys for the purpose of enforcing such claim generally looks to 11 U.S.C. § 506(b) as authority for such recovery. This section authorizes an oversecured creditor to collect "reasonable fees ... provided under the agreement under which such claim arose." However, in this case, First Federal applied $1678.38 towards its attorneys' fees from the $5000 which the debtor paid to it on September 15, 1983, following the commencement of First Federal's foreclosure action. Hence, when the debtor filed her Chapter 13 case on November 2, 1983, First Federal had already applied a portion of the debtor's funds towards its attorneys' bill and does not seek any further recovery pursuant to 11 U.S.C. § 506(b). Therefore, First Federal's right to apply $1678.38 from the $5000 forwarded to it by the debtor does not hinge upon an interpretation of 11 U.S.C. § 506(b). Instead, reference must be made to the language in the mortgage which purports to allow a recovery for reasonable attorneys' fees under certain specified conditions as follows:

It is expressly agreed that any charge incurred by the Obligee (including reasonable counsel fees) in the determination, notification, and/or adjustment of any default, may be added to the principal balance due.

The foregoing is silent as to foreclosure actions, such as was involved in this case. First Federal maintains that its foreclosure action was tantamount to an "adjustment of any default." The phrase "adjustment of any default" must have meant something to the drafters of the boilerplate language in the mortgage that First Federal prepared. However, an action to foreclose a mortgage is not generally recognized as an "adjustment" of the debtor's rights; it is more in the nature of an elimination of the debtor's interest in the real estate that is being foreclosed. In any event the phrase is ambiguous. Any ambiguity in a document must be construed strictly against the drafter. *Bank of New Jersey v. Larson (In re Kennedy)*, 23 B.R. 466, 473 (Bkrtcy.D.N.J.1982). On the other hand, the phrase "determination ... of any default" clearly has reference to a foreclosure action. A mortgage foreclosure action requires a judicial determination that a default has occurred which gives rise to the mortgagee's right to realize upon the mortgage lien. The debtor in this case expressly agreed under the written mortgage and note that "any charge incurred by the Obligee (including reasonable counsel fees) in the determination ... of any default, may be added to the principal balance due." The $1678.38 which First Federal incurred as counsel fees for commencing the foreclosure action against the debtor was clearly embraced under the language in dispute and is reasonable in amount. Accordingly, First Federal was authorized under the mortgage and note to apply the $1678.38 it received from the debtor towards its counsel fees.

The debtor makes a further argument that whatever right First Federal had to recover counsel fees was forfeited because the debtor was not furnished with notice of default and notice of the right to cure the mortgage default prior to the commencement of the foreclosure action. The FHLBB regulation upon which the debtor relies was promulgated in 1980, before the foreclosure action was instituted, but after

the mortgage upon which it is based was executed. The regulation provides in pertinent part:

*Notice before repossession, foreclosure, or acceleration.* (1) Except in the case of abandonment or other extreme circumstances, no action to repossess or foreclose, or to accelerate repayment of the entire outstanding balance of the obligation, may be taken against the debtor until 30 days after the creditor sends the debtor a notice of default.... (2) The notice ... shall state the nature of the default, the action the debtor must take to cure the default, the creditor's intended actions upon failure of the debtor to cure the default, and the debtor's right to redeem under state law.

12 C.F.R. § 590.4(h) (1983).

First Federal concedes that no such notice was sent to the debtor and that this regulation was in effect prior to the commencement of its foreclosure action. First Federal contends, however, that the notice requirement prescribed by the FHLBB in 1980 should not apply to a foreclosure based on a 1972 mortgage loan.

The FHLBB foreclosure prerequisite of sending notice of default and of the right to cure the default is contained in a series of regulations issued under section 501 of the Depository Institutions Deregulation and Monetary Control Act of 1980, Pub.L. No. 96–221, 94 Stat. 132, 161. *See* 12 C.F.R. § 590.1(a) (1983). This statute, designed to exempt "federally related mortgage loans" from state usury laws, specifically applies only to loans "made after March 31, 1980." § 501(a)(1)(B), 94 Stat. at 161. It is clear that the statute under which the notice of default regulation was issued does not apply to the loan in question. The FHLBB regulation must be construed consistently with the terms of the statute so that it affects only those mortgages within the pale of Congress' legislation. As the Supreme Court has stated:

The rulemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law. Rather, it is

"the power to adopt regulations to carry into effect the will of Congress *as expressed by the statute.*"

*Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 214–15, 96 S.Ct. 1375, 1391–92, 47 L.Ed.2d 668 (1976) (quoting *Manhattan General Equipment Co. v. Commissioner,* 297 U.S. 129, 134, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1936)). Thus, the regulation issued by the FHLBB in 1980, 12 C.F.R. § 590.4, requiring notice of default and right to cure, cannot be applied to the loan made to the debtor in 1972 because the statute under which it is issued has no applicability to this loan. The lack of notice to the debtor does not affect First Federal's right to be reimbursed for counsel fees incurred in connection with the foreclosure action. Accordingly, the debtor's objection to First Federal's application of $1678.38 to counsel fees is denied.

## CONCLUSIONS OF LAW

1. The 1982 FHLBB regulation authorizing the capitalization of interest, 12 C.F.R. § 545.6–2(a)(2)(iv), does not apply to the loan document executed by the debtor in 1972.

2. The federal regulation in effect in 1972 did not pre-empt New York law prohibiting the charge of interest upon interest.

3. The provision in the loan contract authorizing the capitalization of interest is void. Therefore, First Federal's claim against the debtor is invalid to the extent that it includes a charge of interest upon interest.

4. The debtor has failed to present any evidence establishing the nonpayment of interest on her escrow fund maintained with First Federal and in this regard her objection to the claim is denied.

5. The mortgage and loan provisions authorizing the charge of attorneys' fees in the determination, notification and/or adjustment of any default include costs incurred in connection with the commencement of a mortgage foreclosure action.

6. There was no duty that First Federal notify the debtor of her default and of the right to cure the default because the regulation imposing this notification procedure does not apply to mortgages made prior to March 31, 1980.

7. The debtor is not entitled to recover $1678.38 applied by First Federal to pay legal fees and her objection as to this point is denied.

SUBMIT ORDER on notice.