**In re BERRY ESTATES, INC., Debtor.**

**No. 83 B 20284.**

United States District Court,
S.D. New York.

March 27, 1985.

Zalkin, Rodin & Goodman, New York City, for Jamaica Sav. Bank FSB; Andrew D. Gottfried, New York City, of counsel.

Ferraro Rogers Dranoff Greenbaum Cody Goldstein & Miller, P.C., Pearl River, N.Y., for Berry Estates, Inc.

## DECISION ON MOTION FOR ORDER DETERMINING REASONABLE AMOUNT OF COLLECTION COSTS INCURRED

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Jamaica Savings Bank FSB ("Jamaica"), has moved for an order determining the reasonable amount of its collection costs incurred in this case. The debtor, Berry Estates, Inc., having achieved a confirmation of its Chapter 11 plan, objects to the amount of counsel fees claimed, arguing that mortgage foreclosure fees should be excluded and that the evidence does not support the sums claimed.

### FACTS

The parties had engaged in a great deal of legal skirmishing even before the debtor filed with this court its petition for a reorganization under Chapter 11 of the Bankruptcy Code on June 1, 1983. Jamaica held a first mortgage on ten of the twelve buildings comprising the debtor's garden apartment complex in Rockland County, New York. The principal sum of $2,672,091 came due on December 17, 1981, the maturity date of the mortgage. The debtor's default in payment prompted Jamaica to commence a mortgage foreclosure action in February of 1982 in the Supreme Court of the State of New York, Rockland County. Jamaica was represented in the state court foreclosure action by the firm of Kleinman & Saltzman, P.C. Following the commencement of the debtor's Chapter 11 case, the firm of Zalkin, Rodin & Goodman was retained by Jamaica to represent it in the reorganization case. Both firms were retained on a basis whereby they provided Jamaica with periodic billings reflecting hourly rates for legal services and expenses incurred. Both law firms were paid by Jamaica in full for the legal services rendered.

For the period of February 1982 through November 1984, Kleinman & Saltzman, P.C. billed Jamaica for services rendered in connection with the foreclosure action for 365.75 hours of legal time expended for a total sum of $50,735.50, together with expenses incurred in the sum of $2412.39, for an aggregate amount of $53,147.89. For the period of June 1983 through October 1984, Jamaica paid bills rendered by Zalkin, Rodin & Goodman for legal services in the Chapter 11 reorganization case in the sum of $72,934.50 for 556.5 hours of legal time expended, together with the payment of $5,119.97 for expenses incurred, for total fees and disbursements in the sum of $78,054.47. Jamaica now seeks reimbursement for its collection costs in the sum of $131,202.36.

The state court mortgage foreclosure action was bitterly contested. Jamaica successfully sought and obtained the appointment of a receiver to control the property. The debtor's motion to restrain the appointment of a receiver was denied by the state court. The debtor appealed to the Appellate Division, Second Department, and sought a stay of the order appointing a receiver pending the debtor's appeal. Jamaica's position was sustained by the Appellate Division. However, the receiver had to be removed after Jamaica learned that he had entered into an unlawful agreement with the debtor whereby the receiver was paid monthly fees while permitting the debtor to control its property. Accordingly, Jamaica moved for the removal of the receiver and the appointment of a successor receiver. The motion was granted and again the debtor appealed. The debtor unsuccessfully sought to stay the removal of the first receiver pending the appeal. Thereafter, Jamaica made several motions in order to compel the removed receiver to account for funds in his possession. Fol-

lowing the appointment of a successor receiver, the debtor commenced its Chapter 11 case in this court, thereby staying the pending state court mortgage foreclosure action.

Upon filing its Chapter 11 petition, the debtor promptly submitted an application to this court pursuant to 11 U.S.C. § 363(c) seeking authority to use cash collateral, namely the rents from the mortgaged premises. After hearings were held, the debtor's motion was denied on September 15, 1983. The debtor sought a new hearing to use cash collateral, which was also denied. Jamaica then applied to this court for a determination of the amount and validity of the mortgage indebtedness due it from the debtor. Following various hearings with regard to this application, this court entered a decision on November 16, 1983 determining the amount of the indebtedness to Jamaica to be $2,662,328.99, with post-maturity interest at the variable rate of prime plus two percent. *In re Berry Estates, Inc.*, 34 B.R. 612 (Bkrtcy.S.D.N.Y. 1983). The order which was entered on November 28, 1983 provided that Jamaica's secured claim included "expenses of collection, including reasonable attorney's fees ... as provided in the ... mortgages and Extension Agreement...." The debtor appealed this court's November 28, 1983 order to the District Court. Jamaica moved in the District Court to dismiss the appeal. During the pendency of the motion, the debtor and Jamaica stipulated to the withdrawal of the appeal with prejudice.

In May of 1984, the debtor's third motion seeking authorization to use cash collateral was denied by this court. As a result, various stipulations were entered into between the debtor and Jamaica authorizing certain expenditures of cash collateral on a month to month basis in order to allow the debtor to continue to operate and maintain its property.

The debtor had difficulty in proposing a Chapter 11 reorganization plan that was acceptable to creditors. Many hearings were required, which resulted in five unsuccessful amendments of the plan of reor-

ganization. Finally, on October 24, 1984, this court entered an order which confirmed the debtor's Sixth Amended Reorganization Plan. Pursuant to Article V of the Plan, the debtor was required to deposit in escrow with its then attorneys, Skadden, Arps, Slate, Meagher & Flom, such sum as Jamaica claimed was due it on account of collection costs incurred by Jamaica, which sum was disputed by the debtor as to amount. Pursuant to the confirmation order, the debtor was required to deposit the sum of $127,000 with the escrow agent on account of Jamaica's collection costs.

## DISCUSSION

■ The debtor's objection to any allowance for the costs incurred in collecting the mortgage debt is addressed to the clause in the mortgage that calls for reimbursement of the mortgagee for "all sums that may be advanced or liability for which [sic] may be incurred by the [mortgagee], including *reasonable attorney's fees, either to remedy a default by the [mortgagor], or to defend or preserve the rights and lien* created by said bond or note, mortgage, any prior extension agreement or this agreement." (emphasis added). The debtor extracts the phrase "to remedy a default by the mortgagor" from the foregoing clause and correctly asserts that this provision alone is not the equivalent of an obligation to pay counsel fees in an action to foreclose a mortgage. Indeed, this clause was used against Jamaica by the New York Supreme Court, Appellate Division, Second Department, to deny the recovery of counsel fees because it was held that the phrase "to remedy default" does not envision acts in foreclosure undertaken to terminate the mortgage relationship. *Jamaica Savings Bank v. Cohan*, 38 A.D.2d 841, 330 N.Y. S.2d 119 (2nd Dep't 1972). It is now well-settled that a proceeding to foreclose a mortgage does not "remedy" a default under the mortgage. *In re Roberts*, 20 B.R. 914 (Bkrtcy.E.D.N.Y.1982); *Lipton v. Specter*, 96 A.D.2d 549, 465 N.Y.S.2d 59 (2nd Dep't 1983). However, a foreclosure action following a default is one of the

primary remedies available to a mortgagee to preserve "the rights ... created by said ... mortgage [or any] extension agreement" as expressed in the clause in question. The preservation of the mortgagee's rights upon default has as much reference to a foreclosure as the phrase "determination of any default," which was held to sustain the recovery of reasonable attorney's fees in *In re Guccione*, 41 B.R. 289 (Bkrtcy.S.D.N.Y.1984). Thus, the entire mortgage clause dealing with the allowance of attorney's fees in the event of any default must be considered in the context of collection costs, and not just the mortgagee's limited right "to remedy default," as used in the clause in question. In any event, notwithstanding state law, 11 U.S.C. § 506(b) applies in bankruptcy cases where an oversecured creditor is entitled to an allowance for reasonable fees, costs or charges provided for under the agreement under which the claim arose. This point was elucidated in the legislative history accompanying 11 U.S.C. § 506(b), which states:

> If the security agreement between the parties provides for attorneys' fees, it *will be enforceable under title 11, notwithstanding contrary law....*"

H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5854, 6312 (emphasis added).

Accordingly, an order was entered in this case on November 28, 1983, which declared that "Jamaica has a secured claim for ... expenses of collection, including reasonable attorney's fees...." In light of the fact that the parties entered into a stipulation order in the District Court on March 14, 1984, dismissing the debtor's appeal from the November 28, 1983 order, with prejudice, the allowance of reasonable attorney's fees as part of Jamaica's mortgage collection costs is now undisputable.

■ Additionally, the debtor's Sixth Amended Reorganization Plan expressly provided that Jamaica's mortgage collection costs would be paid under the plan and a procedure was established whereby the amount of $127,000 was deposited in escrow to cover such costs, pending a determination as to the precise amount. The order dated October 24, 1984, which confirmed the debtor's Sixth Amended Reorganization Plan, declared that Jamaica's claim included a contractual obligation of the debtor to pay Jamaica's costs of collection. Hence, the debtor may not now contest Jamaica's right to be reimbursed for its collection costs, including reasonable attorney's fees incurred as part of the collection effort.

■ The debtor's contention that there was a duplication of services rendered by Kleinman & Saltzman, P.C. in their state court foreclosure activities and by Zalkin, Rodin & Goodman during the reorganization activities in this court, does not withstand close scrutiny. Obviously a certain amount of telephone conferences between these firms was required in order for both firms to remain informed as to what the other was doing. However, each firm pursued its assigned task without any prohibited duplication of effort. Jamaica was satisfied with their accomplishments and paid their bills in full.

The services rendered by Kleinman & Saltzman, P.C. in the state court mortgage foreclosure action, including the removal of the first receiver and the appointment of a successor receiver, were necessary and reasonable. The debtor's numerous motions and actions to forestall Jamaica from enforcing its rights under the mortgage consumed a substantial amount of billable legal time. Kleinman & Saltzman, P.C. performed their legal services for Jamaica expeditiously and in a professional manner. Hence, Jamaica is entitled to reasonably incurred legal fees of $50,735.50 and properly paid costs of $2412.39, for a total sum of $53,147.89. Jamaica's collection costs of $53,147.89 are recoverable pursuant to this court's order dated November 28, 1983 as well as under the terms and provisions of

the confirmed Sixth Amended Reorganization Plan.

■ For the Chapter 11 reorganization case, Jamaica paid the firm of Zalkin, Rodin & Goodman the sum of $72,934.50, together with expenses of $5119.97. Included in the expenses are nonreimbursable items, such as photocopying costs, which should be treated as part of office overhead and deductible on the firm's income tax return. Accordingly, for purposes of this case, it is found that Jamaica is entitled to reimbursement for properly incurred disbursements to the extent of $2579. The legal services performed by Zalkin, Rodin & Goodman were not only of benefit to Jamaica, but also to the estate and its creditors. It was the impetus from this firm, on behalf of Jamaica, that eventually resulted in a confirmed reorganization plan. The skillful manner in which this firm applied their legal talents in this case amply supports an award to Jamaica as reimbursement for the attorneys' fees incurred in this court. However, consideration must also be given to the fact that some of the billable hours expended by Jamaica's counsel involved the routine monitoring of some plan hearings where the debtor's major opponents were the New York State Department of Housing and the tenants' association. In light of all of the facts in this case, Jamaica is entitled to be reimbursed for its legal fees in this court in the sum of $71,273.11, which is both fair and reasonable, together with the disbursements of $2579, for an aggregate amount of $73,852.11.

Based upon the foregoing, the escrow agent shall pay to Jamaica the sum of $53,147.89 as reimbursement for the legal services of the firm of Kleinman & Saltzman, P.C. in the state court mortgage foreclosure action. Additionally, the escrow agent shall pay to Jamaica the sum of $73,852.11 as reimbursement for the reasonable collection costs incurred in this court by reason of the legal services performed in this case by the firm of Zalkin, Rodin & Goodman.